(No. 14800.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JACOB PERLMUTTER, Plaintiff in Error.

*Opinion filed February 21, 1923.*

1. CRIMINAL LAW—*the trial court cannot set aside its judgment after defendant has begun serving sentence.* Where a judgment of conviction has been rendered and the defendant has been sentenced and delivered to the prison authorities and is serving his sentence the trial court cannot vacate or set aside its judgment.

2. SAME—*when ·sufficiency of evidence is not open to review.* Where a defendant has begun serving his sentence after a judgment of conviction, errors assigned upon the rulings of the court during the progress of the trial as to the introduction of evidence and the giving and refusing of instructions are properly presented for review where exceptions to said rulings have been preserved, but the denial of a motion for a new trial, made after the defendant has begun serving· sentence, does not present ·for review the sufficiency of the evidence to warrant the conviction.

3. SAME—*when evidence of confidential dealings with others is not admissible in prosecution for confidence game.* In a prosecution for the confidence game, before transactions of a similar nature with other persons are admissible to show guilty knowledge and intent it is first essential to prove that the defendant obtained the property of the person named in the indictment by means of the confidence game, and where the charge is that the defendant bought the property without intending to pay for it, evidence of similar transactions with others is not admissible without proof of deceit.

4. SAME—*what necessary to constitute the confidence game.* To constitute the confidence game the party charged must by use of a false or bogus check or by some means, instrument or device have secured the confidence of the victim, and having so secured it for the purpose of defrauding him, obtained his money or property.

5. SAME—*confidence must have been obtained with fraudulent purpose—instructions.* To be guilty of the confidence game the defendant must be proved to have obtained the confidence of his victim with the fraudulent purpose of obtaining his money or property, and an instruction that a person is guilty of the confidence game who obtains the money or property of another by false representations or fraudulent acts *"after* his confidence has been obtained" is misleading.

WRIT OF ERROR to the Circuit Court of Effingham county; the Hon. WILLIAM B. WRIGHT, Judge, presiding.

MAURICE J. GREEN, and PHILIP SULTAN, (ALVIN E. STEIN, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, PAUL TAYLOR, State's Attorney, and FLOYD E. BRITTON, for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

This writ of error is sued out to review a judgment of conviction and sentence of Jacob Perlmutter for an' indefinite term to the penitentiary on the charge of the confidence game.

Plaintiff in error (hereafter called defendant) was indicted in the circuit court of Effingham county, together with Joseph Rodgers and L. Alden Fillman. The indictment contained one count, and charged the defendants with unlawfully, fraudulently and feloniously obtaining from Adolph Druin his property, of the value of $692, by means and use of the confidence game. The defendants named in the indictment had been since April, 1921, engaged in the poultry, butter and egg business at Sigel, Effingham county, under the firm name of Forest Creamery Company. A bill of particulars filed by the People stated the parties named in the indictment were engaged in the buying and selling of produce and poultry in Effingham and adjoining counties and shipping to market in large cities; that prior to October 1, 1921, they paid for produce bought, and their course of dealing with Druin and other customers was such that they obtained the confidence of Druin and of the community surrounding Sigel; that between October 1 and 15 they obtained of Druin produce and poultry to. the value of $692 without paying for it, he giving them confidence and credit on account of their dealings in the past; that de-

fendant Perlmutter obtained the property with intent to defraud Druin out of its value, intending to dispose of it for his own use and benefit, and that he did convert the property to his own use in some manner and by some means, the details of which are to the People unknown, intending to defraud Druin, and that he was thus defrauded and swindled out of his property to the value of $692. A plea of not guilty was entered and the People *nollied* the indictment as to Rodgers and Fillman and they testified on behalf of the People in the trial of Perlmutter.

The errors assigned are that the evidence was wholly insufficient to sustain the verdict and judgment, and the court erred in the admission of testimony and in giving instructions on behalf of the People and refusing instructions requested by defendant.

The record does not present for our review the sufficiency of the evidence to sustain the conviction. When the verdict of guilty was returned by the jury defendant's counsel made a motion for new trial but immediately withdrew it, and defendant was sentenced to the penitentiary the same day the verdict was returned. It appears he was at once taken to the penitentiary and entered upon serving his sentence of from one to ten years. About a month later, but during the same term of court, other counsel than those who represented defendant at the trial filed a motion to arrest the judgment and grant a new trial, setting out fourteen reasons in writing. The court denied the motion and granted leave to defendant to present and file a bill of exceptions within ninety days. We have held that where a judgment of conviction and sentence has been rendered and defendant has been delivered to the prison authorities and is serving his sentence the court cannot vacate or set aside its judgment. *People* v. *Turney,* 273 Ill. 546; *People* v. *Whitman,* 277 id. 408; *People* v. *LaBuy,* 285 id. 141.

Exceptions to the rulings of the court during the progress of the trial upon the giving and refusing of instruc-

306—32

tions and to the introduction of evidence were preserved, and the errors assigned on those rulings are properly presented for review. *Yarber* v. *Chicago and Alton Railway Co.* 235 Ill. 589; *Illinois Central Railroad Co.* v. *O'Keefe,* 154 id. 508.

While the sufficiency of the evidence to warrant the conviction is not reviewable under this record, it is proper that it be examined for the purpose of intelligently passing upon the errors assigned which are reviewable.

From the testimony it appears that prior to April, 1921, Rodgers, Fillman and a man named Cleaver were conducting a poultry and produce business in Sigel under the firm name of Forest Creamery Company. The business had been carried on by other parties under the name of Forest Creamery Company for several years. Rodgers, Fillman and Cleaver bought it from one Peterson in August, 1920. Cleaver advertised in a poultry journal for a purchaser of his interest, and defendant, who had been engaged in the poultry business in Philadelphia for fifteen years, saw the advertisement. He came to Sigel and bought Cleaver's one-third interest in April, 1921, and the business was thereafter carried on by him, Rodgers and Fillman. They bought poultry and other produce in the surrounding country and shipped to the market. They appear to have had but little working capital, and through defendant after he became a member of the firm they borrowed some $4000 or $5000 from his relatives. There appears to have been a mortgage held by Peterson on the building which they occupied in conducting their business. In the latter part of August, 1921, the building and contents, or at least part of them, were destroyed by fire. They collected the insurance, paid the mortgage out of it and had something like $2400 left, with which Rodgers testified they paid some debts. A large portion of the shipments was made to Gill & Co., of Philadelphia. Their practice was to draw on the consignee for the value of the shipment, and sometimes they drew for

more than its value and mailed checks to the consignee for
the amount overdrawn. The drafts were all honored by
Gill & Co. prior to October 1, but as they exceeded the
amount due for the shipments, a representative of Gill &
Co. went to Sigel to investigate matters, and some arrange-
ment was made between the defendant, a bank at Sigel and
the representative of Gill & Co. that they might continue
making shipments and Gill & Co. would honor their drafts.
They appear to have lost money on some shipments. In
one shipment, when it was received by the consignee, a
large amount of the poultry was dead, which the shippers
claimed was the fault of the express company, due to its
neglect and delay, and they made a claim and later brought
suit for about $1200. The last shipments to Gill & Co. were
made in October, and defendant accompanied the last one
to Philadelphia. The markets were bad, and Gill & Co.
claimed they had paid overdrafts on shipments and that the
Forest Creamery Company was indebted to them, and they
would not pay the drafts unless some other arrangement
could be made. Defendant wired his partners to issue no
more checks, as Gill & Co. would not pay drafts until the
matter could be arranged with them. The last two ship-
ments were applied on the indebtedness due to Gill & Co.,
leaving a balance, Gill & Co. claimed, due them of about
$1100. Defendant gave them a check for $300 and wired
his partners to that effect. Before he left Philadelphia de-
fendant received a wire from one of his partners that there
was trouble and that trucks and property of the firm had
been seized by creditors. Defendant wired he would return
at once and asked his partners to meet him at Mattoon.
When he arrived at Mattoon he was arrested, placed in jail
and was there confined until the time of his trial. While
defendant was in Philadelphia, Rodgers or Fillman bought
poultry of Druin to the amount of $692. Rodgers testified
Druin wanted a check for the money, and that he informed
him there was no money of the firm in the bank to pay it,

and the check was accepted with that understanding. No other business was done by the firm after the defendant's arrest, and besides the indebtedness to Druin there were numerous other bills due other people from whom the Forest Creamery Company had bought property. This is a mere skeleton outline of some of the principal features of the case.

On the trial the court permitted several witnesses for the People, over objections of defendant, to testify they had sold property to the Forest Creamery Company for which they had not been paid. This evidence was admitted upon the theory that where a defendant has obtained money or property of others by the same or similar schemes, it is competent to prove that fact for the purpose of showing guilty knowledge and intent. It is first essential to prove the defendant has obtained the money or property of the person named in the indictment by means of the confidence game before proof by other persons is competent that defendant had obtained money or property from them by the same scheme. The evidence to sustain the charge in the indictment was at least of a character which required that the trial should have been free from any error that might be prejudicial to the defendant. Some of the creditors of the Forest Creamery Company who testified against defendant testified they had dealt with that firm previous to contracting the unpaid indebtedness and except the last deals all bills due them had been paid. Some of them had never seen or dealt with defendant personally. All the unpaid indebtedness was incurred shortly before the firm's business was stopped. Some three or four of the witnesses testified they had been given checks by Rodgers, who bought the property, and some of them said they were told by him at the time that there was no money of the firm in the bank to pay them. The testimony of none of the witnesses showed any deceit was practiced by defendant or anyone else to obtain their confidence for the purpose of

defrauding them out of money or property. The testimony
of all those witnesses was incompetent and was prejudicial
to defendant.

Instruction No. 2 given for the People is misleading. It
tells the jury, in substance, that where one obtains the con-
fidence of another, and by false representations, statements
or fraudulent acts, *"after* his confidence has been obtained
by the swindler," obtains the money or property of another,
he is guilty of the confidence game. The statute defines
the confidence game to be the procuring from a person of
his money or property "by means or by use of any false or
bogus check or by any other means, instrument or device
commonly called the confidence game." This court said in
*People* v. *Santow,* 293 Ill. 430: "In order to find plaintiffs
in error guilty of the confidence game as defined by the
statute, proof must be made that by the use of false state-
ments, misrepresentations or pretenses they secured the con-
fidence of the complaining witness, and that, having so se-
cured such confidence, they defrauded him or attempted to
defraud him of his money." To constitute the confidence
game the party charged must, by the use of a false or bo-
gus check, or by some means, instrument or device com-
monly called the confidence game, have secured the confi-
dence of the victim, and having so secured it for the pur-
pose of defrauding him, obtained his money or property.
In other words, he must by the fraudulent instrument or
means used have obtained his confidence for the purpose
of swindling him. A man may obtain the confidence of
another by honorable conduct and dealing and may obtain
property from him which he promises and agrees he will
pay for but may violate his promise. Under the instruc-
tion as given it was liable to be understood as meaning that
where a man has conducted himself so as to secure the con-
fidence of another without intending to abuse that confi-
dence in any way, and he afterwards obtained the other's
money or property by promises and representations that he

could and would pay for it, unless he kept those promises he would be guilty of the confidence game. The theory of the People's argument is that defendant went into the business of the Forest Creamery Company for the purpose of establishing credit and obtaining the confidence of his customers by fair dealing and afterwards getting in debt as far as possible and pocketing the available money and assets of the firm. Under the evidence in this case the instruction was misleading and should not have been given.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*