THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HERMAN HEINSIUS, Plaintiff in Error.

*Opinion filed December 16, 1925.*

1. CRIMINAL LAW—*what constitutes the confidence game.* The gist of the crime of obtaining money by means or use of the "confidence game" is the obtaining of the confidence of the victim by some false representation or device, and the offense includes any scheme whereby a swindler wins the confidence of one and then swindles him out of money or property by taking advantage of the confidence, the form of the transaction being immaterial.

2. SAME—*when confidence game is not established.* Before a defendant can be found guilty of the charge of the confidence game the intent to swindle the complaining witness must be proved beyond a reasonable doubt, and the offense is not established by evidence that the defendant sold to the complaining witness certain bonds that turned out to be a poor investment, without any evidence that at the time he sold the bonds the defendant had any reason to believe they were a poor investment or had any intention whatever of swindling the complaining witness.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding.

JACOB LEVY, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and CLARENCE E. NELSON, of counsel,) for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error was indicted, tried and convicted in the criminal court of Cook county upon a charge of obtaining money, goods and personal property from Max Roeder by means and by use of the confidence game, and the record is now before us upon writ of error.

Plaintiff in error in 1919 was a dealer in bonds and also a director of a motion picture company in the city of Chi-

cago. In the summer of 1919 he became acquainted with Roeder at Lake Geneva, Wisconsin. At that time Roeder learned that plaintiff in error was in the bond business. After their return from Lake Geneva Roeder called upon plaintiff in error at his office and inquired if he had any good bonds for sale. Plaintiff in error informed him that he had some good Wyoming Asbestos Syndicate bonds, which were paying eight per cent, and at the same time showed him a sample of the asbestos as it came out of the mine. As the result of the talk Roeder bought bonds of the face value of $2000, paying par therefor.

The evidence against plaintiff in error consists of the testimony of Roeder and of some other persons who purchased bonds from him, who tell the circumstances of their purchase and their efforts to regain their money after payment of interest from the bonds had been temporarily stopped, and the testimony of a former official of the asbestos company, who testified that the assets of the company were worthless, although his testimony, upon cross-examination, shows that at the time of their sale to Roeder the bonds did have a value and that interest at the rate of eight per cent was paid thereon for some time after their sale, and his cross-examination likewise shows that at the time plaintiff in error bought his bonds,. and at the time he sold them to Roeder, plaintiff in error believed that the bonds were a good investment, and that when a year later the payment of interest upon the bonds was waived temporarily by direction of the owners of the majority of the stock in accordance with a provision in the bonds, plaintiff in error was very indignant at the management because the people to whom he had sold the bonds had not received their interest, and that he was instrumental in securing payment of interest to the persons to whom he had sold the bonds. The evidence introduced on behalf of the State corroborates the evidence of plaintiff in error to the effect that he purchased several thousand dollars worth of the bonds from

the officials of the company in good faith, upon representations made to him by the officials and a geologist's report; that for a portion of the bonds he paid eighty per cent of their par value and for $8000 thereof he gave $7000 worth of diamonds. The geologist's report was made by a geologist of William Jewell College, Liberty, Missouri, who after an inspection of the properties summarized his report as follows: "I wish in conclusion to emphasize the following facts relative to this truly remarkable group of asbestos properties: The known extent of asbestos in this Broken Pine group assures the development of a valuable mine. The proportion of asbestos to rock handled, even on the surface and outcroppings, is unusually large, while the veins give evidence of persistence that will yield good returns for long and steady working. The quality of the fibre measures up to the demands for textile purposes, and it is easily separated from the Dike rock in fine condition for shipping. The climate of this section is so favorable that mining can be carried on continuously throughout the year, and there is an assured market for all grades of fibre near at hand, with profitable prices assured. The deposit warrants an outlay of money sufficient to make of it a great mine. I am confident that aggressive working in accordance with the plan that has been suggested will make this one of the greatest asbestos mines and bring fine returns on capital required for it." The evidence on behalf of the State shows that at the time plaintiff in error purchased the bonds, and at the time he sold them, he had no reason to believe that the bonds were not a good investment.

The gist of the crime of obtaining money by means or use of the "confidence game" is the obtaining of the confidence of the victim by some false representations or device, and covers any scheme whereby a swindler wins the ` confidence of one and then swindles him of money or property by taking advantage of the confidence, and the form of the transaction is immaterial. (*People* v. *Peers,* 307 Ill.

539; *People* v. *Rosenbaum,* 312 id. 330.)    Before a defendant can be found guilty of the charge of the confidence game the intent to swindle the complaining witness must be proved beyond a reasonable doubt.    (*People* v. *Massie,* 311 Ill. 319; *People* v. *Santow,* 293 id. 430; *People* v. *Koelling,* 284 id. 118.)    There is no evidence in this case that at the time plaintiff in error sold the bonds in question to Roeder he had any intention whatever of swindling him.

The judgment of the criminal court is reversed.

*Judgment reversed.*