THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RAYMOND J. BISCHOFF, Plaintiff in Error.

*Opinion filed December 16, 1925.*

CRIMINAL LAW—*what is not sufficient to prove confidence game.* The confidence game is not established without proof, beyond a reasonable doubt, that the swindler obtained the money of the victim by taking advantage of his confidence for the purpose of betraying it and thereby swindling the victim out of his property, and a conviction is not warranted where there is no proof of false representations by the defendant, the evidence showing merely that the complaining witness lost his money through fluctuations in *bona fide* stock which the defendant persuaded him to purchase.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM J. LINDSAY, Judge, presiding.

LITSINGER, HEALY & REID, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and CLARENCE E. NELSON, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

In 1920 plaintiff in error, Raymond J. Bischoff, conducted an office in the city of Chicago from which he engaged in speculation in stocks and oil leases and where he received from other persons money for use in speculation. February 11, 1922, he became bankrupt. In January, 1925, he was arrested and shortly thereafter was indicted by the grand jury of Cook county. The indictment contained three counts, the first charging him with the larceny of $1060 of the money of John P. Poska, another charging him with the embezzlement of the same money, and the third charging him with obtaining the same money by means of the con-

fidence game. The jury found the defendant guilty under the third count, and the judgment which this writ of error is prosecuted to review was entered.

Poska's testimony is so contradictory and otherwise unreliable that it is difficult to determine just what charge he makes. After analyzing his testimony we think the following a fair statement of its substance: In the fall of 1920 I was a student. I had no money and was in search of part-time employment. I applied to Bischoff for a job, and he told me that he employed only people who invested with him. He said he was engaged in speculation on the stock market and in oil leases and that the smallest amount he would accept for investment was $50. I did not have the money but a few weeks later I borrowed $50 and made my first investment. In one month Bischoff told me that I had made 50 per cent profit. I borrowed $100 more, which I added to the $75 and made a second investment. A few months later Bischoff told me I had made 100 per cent profit, and I re-invested the $350 with him. At this time I was in his employ. I continued my investments with Bischoff until he went into bankruptcy, in 1922. In the fall of 1921 I invested $600 with Bischoff, which he was to use in speculations upon the stock market. I also bought through him 1000 shares of Y Oil Company stock at forty-six cents a share. This stock was being sold daily on the New York curb and I watched the daily quotations published in the newspapers. Four or five weeks after I bought the stock I could have sold it for more than one dollar a share. At this time Bischoff was a heavy stockholder in the oil company and said that he was president of it. As a stockholder I received letters from the company signed by him as president. I saw in his office many certificates of Y Oil Company stock and saw him buy a large amount of the stock in 1921. In addition to the 1000 shares which I purchased I sold 3000 shares to other customers. When the stock was quoted at $1.05 and $1.08 I asked Bischoff to sell

it for me, and he told me to hold it, because it would go higher. I took his word for it and kept it. I still own the stock and it is now selling for six cents a share. Before I bought the stock I went to Kansas and Louisiana and inspected the oil leases which Bischoff said he owned.

Tyrol E. Wilson testified that he entered the employ of Bischoff in May, 1920; that he later became Bischoff's cashier; that the field agents reported to him the amounts brought in by them from Bischoff's customers for speculative purposes; that the largest receipts for any one day were slightly in excess of $200,000; that in April, 1921, Bischoff took about 125 people, including field agents and customers, to the oil fields of Kansas, Louisiana and Texas; that the people rode in four Pullman cars at Bischoff's expense; that they made stops at Racine, Kansas, Freeport, Vivien and Harmon, Louisiana, and Mooresport, Texas; that they visited the oil fields at these places and saw oil wells and well drills there; that Bischoff told those in the party that he owned the leases and that he had great prospects for making money. In October, 1921, Wilson bought some Y Oil Company stock at twenty-six cents a share and sold it within three months for eighty-nine cents. Witness followed the New York curb quotations in the daily papers and thereby kept track of the daily quotations.

Seven other witnesses testified for the prosecution, but all their testimony amounted to was that they had made investments with Bischoff and had lost their money. All of them made the investments with the understanding that their money was to be used in speculations upon the stock market and in oil leases.

The $1060 which Poska claims Bischoff procured from him by means of the confidence game consists of the $600 which he says he invested with Bischoff for the purpose of speculating in stocks and the $460 which he paid for the Y Oil Company stock. From Poska's testimony the conclusion is warranted that he made profits aggregating more than

this $1060 while he was speculating through Bischoff. He had the opportunity to make a profit of more than 125 per cent on the money he invested in the oil stock within five weeks after he made the investment. Wilson did make nearly 250 per cent profit on his investment in the same stock. If Bischoff and Poska had sold their Y Oil Company stock as Wilson did, probably Bischoff would not have been forced into bankruptcy and Poska would not be complaining that he lost his money through the confidence game. There is no showing in this record that Bischoff ever made to Poska a statement of fact that was not true. The Y Oil Company stock was then, and is now, a genuine stock. The company is now in existence, and Alfred F. Leopold, who succeeded Bischoff as president of the company, testified that during the year 1921 eight wells on the Burbank lease, in which the Y Oil Company owned an undivided one-fourth interest, produced 541,159 barrels of oil, and that in 1922 the total production from double the number of wells was 562,328 barrels. There is no proof in this record that Bischoff did not own the oil leases which he showed to Poska and the other persons in April, 1921. All this record shows is that Poska speculated on Bischoff's judgment and made money for a while and then lost his profits in further speculation. Bischoff may be guilty of crime, but it has not been proven in this record. Confidence game is not established without proof, beyond a reasonable doubt, that the swindler obtained the money of the victim by taking advantage of his confidence for the purpose of betraying it and thereby swindling the victim out of his property. *People* v. *Massie*, 311 Ill. 319; *People* v. *Peers*, 307 id. 539; *People* v. *Perlmutter*, 306 id. 495; *People* v. *Santow*, 293 id. 430; *People* v. *Koelling*, 284 id. 118.

The judgment of the criminal court is reversed.

*Judgment reversed.*