(Nos. 17236-17237.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EARL G. GEER, Plaintiff in Error.—THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES W. BISCHOFF, Plaintiff in Error.

*Opinion filed April 23, 1926.*

CRIMINAL LAW—*when charges of conspiracy to obtain money by the confidence game and false pretenses are not established.* Charges of conspiracy to obtain money by the confidence game and by false pretenses are not established where the evidence shows merely that the defendants invested money of the complaining witnesses in *bona fide* oil stock, which money was lost because the stock proved to be a poor investment, the investors in each instance knowing that their money was to be used in speculating in stocks and oil leases. (*People* v. *Bischoff,* 319 Ill. 262, followed.)

WRITS OF ERROR to the Third Division of the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding.

LITSINGER, HEALY & REID, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and ROY D. JOHNSON, (EDWARD E. WILSON, CLARENCE E. NELSON, and HENRY T. CHACE, JR., of counsel,) for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

At the February, 1922, term of the criminal court of Cook county Raymond J. Bischoff, Charles W. Bischoff, Thomas O. Davis, E. G. Geer, T. D. Wilson, Charles Darwin, Stephen Bagowitz, Walter Silver, Frank Shaput, Karl Joblowski, Walter Tuskovski, Matthew Venckus, James Jornak, John Mickevitz, John Karbanski, Charles Stankus,

Adolph Sparkevitz, Alex Kissel, Anton Walukas, Joseph Chatro, Felix Jawgil and Frank Dalkus were indicted by the grand jury upon a charge of conspiracy. The indictment consisted of twelve counts, of which the eleventh and twelfth were quashed and a *nolle prosequi* entered as to the third and fourth. Four of the remaining counts alleged a conspiracy to obtain money by false pretenses and four a conspiracy to obtain money by the confidence game, Walter Butkiewicz, Frank Lokis, Francis Laurinatis and Alice Jankus being each named in two counts as the persons whose money was sought to be thus obtained. Raymond J. Bischoff, Davis, Joblowski and Chatro were not tried upon the indictment. A separate trial was granted Wilson, Darwin, Mickevitz and Sparkevitz. During the trial a *nolle prosequi* was entered as to Bagowitz, Silver, Jornak, Kissel, Walukas and Jawgil. The jury found Venckus, Shaput, Stankus, Dalkus, Tuskovski, Karbanski, Charles Bischoff and Earl Geer guilty and they were duly sentenced in accordance with the verdict. Venckus and Stankus were fined and paid their fines. The record as to the others convicted was upon their several writs of error reviewed by the Appellate Court for the First District, which court reversed the judgment of conviction as to all except Charles Bischoff and Geer and affirmed it as to them. Bischoff and Geer sued out writs of error from this court to review the record and the two cases have been here consolidated.

It is contended by plaintiffs in error that the evidence in the case does not show either of them to have been guilty of either a conspiracy to obtain money by the confidence game or by false representations. The transactions on which the prosecution was based occurred in the course of the conduct of the business of Raymond J. Bischoff, who was operating under the name of R. J. Bischoff & Co., of whom plaintiffs in error were employees. These business methods were under review by this court in *People v. Bischoff,* 319 Ill. 262, and it was then held that the evidence in

that case did not show Raymond J. Bischoff to have been guilty of crime. The evidence in the present case covers practically the same range as in *People* v. *Bischoff, supra,* many of the witnesses and the transactions involved being the same in each case. In this case, as in that, one Wilson gave the principal testimony as to the character, methods and extent of the business done by R. J. Bischoff & Co. His evidence is, that R. J. Bischoff had in his employ a large number of agents or field-men, whom he sent out among the people to tell them that he had a "special" on for a certain date, and if they wanted to invest in it they could bring the money to Bischoff's office or send it by the agent; that a "special" was a special transaction in which Bischoff was engaged, such as speculation on the stock market or in oil lands, or concerning a body factory at Columbus in which he was interested, and for which he obtained a certain amount of money for a few months to use in one or more of his various enterprises; that in return for the money Bischoff would give each investor his own promissory note bearing interest at ten or more per cent. The business flourished for a time and the notes were paid in cash at maturity if the investor so desired, or re-invested if desired. Bischoff was largely interested in the sale of Y Gas and Oil Company stock.

In April, 1921, R. J. Bischoff got up an excursion to take field agents and customers to certain places in Kansas, Louisiana and Texas to see what he claimed were his oil properties. A special train of four Pullmans was engaged. It cost about $7000, all of which was paid for by Bischoff. The passengers numbered about 125. All the defendants were aboard except Charles W. Bischoff, who at the time was already at the property in Kansas which was to be visited. The first stop was at Lacine, Kansas, where they met Charles, who had already prepared, pursuant to a telegram he had received from his brother, a dinner for 125 people. The party was then taken around with Charles

in charge and shown various oil wells and witnessed the "shooting" of one particular well. Raymond J. Bischoff, according to Wilson, said the property belonged to him. They were shown altogether twelve or thirteen small wells. They were then taken to Vivian, Shreveport, Harmon and Eldorado, Louisiana. Charles was with them. At Harmon they were shown fifteen or twenty wells, with derricks, which Raymond said he owned. At Vivian they looked over some oil fields. Wilson testified that, though not positive, he thought Raymond said they belonged to him. At Eldorado they looked at oil fields, covered, as Wilson says, with oil wells in such numbers that he could not estimate them. Both Raymond and Charles were there with all the others. Raymond told them that he wanted to take them out and show them a well that he was contemplating buying.

The first amount charged in the indictment as having been sought to be obtained by the alleged conspiracy is $2000 from one Butkiewicz, by trade a tailor. He testified that some time in 1920 he met Shaput, one of the defendants, who told him about the business and said that it sometimes paid fifty and sometimes one hundred per cent; that he then invested $100 and later $250, though whether he paid the money to Shaput or someone else he was not sure; that the first month he got seventy-five per cent on the $100; that then in two or three months he got fifty or sixty per cent; that he also did business in August, 1921, with Dalkus; that September 17, 1921, he gave a check to Dalkus for $2000 and in five or six weeks got $200, and in a month, in the fall of 1921, got $420 more, but nothing thereafter; that he got from Dalkus a Bischoff note for $3000; that he gave Dalkus $400 for 500 shares of the Y oil stock; that Dalkus told him that in a few months Bischoff was going to buy the stock back at two dollars a share; that he also did business with Stankus, giving him $300 on specials; that Dalkus told him he

had invested money in Bischoff's, and after the bankruptcy Dalkus told him that he, too, had lost money in the business. Butkiewicz testified that he lost altogether over $3000. Dalkus testified that he never solicited money from Butkiewicz but did receive a $2000 check and endorsed Butkiewicz's name on it and cashed it and turned the money in to R. J. Bischoff & Co. Shaput testified that in June, 1920, be explained to Butkiewicz the business of R. J. Bischoff & Co. and solicited him to invest; that Butkiewicz then gave him $250 to invest; that at that time he had invested $300 of his own money; that he did not tell Butkiewicz that he would get seventy-five per cent on his money.

The second amount alleged to have been sought to be obtained by the alleged conspiracy is $3900 from Frank Lokis. He testified that he first heard of R. J. Bischoff & Co. through a janitor; that he dealt with the company for about nine months; that some time in August, 1920, he went to the offices and talked with Karbanski and gave him $1000; that Karbanski later brought him a receipt from the company; that after that investment Karbanski called on him and asked him to invest further; that he said they would make money; that he said they would pay six per cent and a good bonus; that the company's business was in oil lands; that he invested ten or eleven times, a total of $3907. Karbanski testified that Lokis first came to the office of R. J. Bischoff & Co. and asked him about the business and invested $1000 and later invested more; that he told Lokis about specials that Raymond J. Bischoff had told him (the witness) about. He further testified that he invested himself and lost $5200, part of which he had saved from twenty-five years of work.

The third amount alleged to have been sought to be obtained by the alleged conspiracy is $1900 from Frank Laurinatis. He testified that he dealt with Matthew Venckus; that in 1921 he was taken to the offices of R. J. Bischoff & Co., and Venckus told him he was agent for Bischoff; that

Bischoff had oil and gold mines and big farms, and that good interest would be paid and he would get a guaranty; that he gave Venckus $1000, then $500, then $400 and then $200; that he received $100 interest on the $1000, $50 on the $500 and nothing further; that he never got back his $2100; that Venckus spoke English and was an educated man; that he canvassed from house to house. Venckus did not testify.

The fourth amount alleged to have been sought to be obtained by the alleged conspiracy is $2100 from Alice Jankus. She testified, partly through an interpreter, that she gave Tuskovski, who lived near her, four or five sums, amounting to $900, for which she received four notes; that he told her it was partly for oil stock and partly for a special; that the money belonged to her and her husband. Tuskovski testified that he induced her to invest $900; that he invested himself and lost $7000.

Much evidence was introduced tending to show various amounts of money which were obtained from persons other than the four above mentioned. Neither plaintiff in error had anything to do, personally, with any one of these four transactions, but they were conducted on the part of Bischoff by Shaput, Dalkus, Karbanski, Venckus and Tuskovski. That each one of these agents believed the representations made by him to be true is evidenced by the fact that they made like investments of their own money, and the Appellate Court found that there was no evidence that showed they conspired or took part in any conspiracy.

Charles W. Bischoff is a brother and Geer a brother-in-law of Raymond J. Bischoff, and they were each in his employ upon a weekly salary. Neither of them had anything to do with the management of the business, nor, so far as the evidence shows, were they consulted by Bischoff as to his methods nor did they give advice as to its conduct. That they had faith in the enterprise is manifested

by the fact that Charles and Geer's wife both invested largely in the specials and that Geer invested in the Y Gas and Oil Company stock. The business prospered for a time but in 1922 went into bankruptcy by reason of the failure of the oil leases to produce. During its prosperity many of the investors made money,—some of them over one hundred per cent on their investments. The oil stock, which was listed on the New York Stock Exchange, went from about twenty-six cents a share to over two dollars, at which price some investors sold, and finally dropped to six cents, at which price it was listed at the time of trial.

What is said in *People* v. *Bischoff, supra,* with reference to the evidence applies with equal force to this case. There is no evidence that any statement of fact made to induce investment was false. The investments were made in each instance by the investors with the understanding that their money was to be used in speculating upon the stock market and in oil leases, for which purpose the money was in fact used. Bischoff did not sell his oil stock when it was two dollars per share but believed it was going up to three dollars. He had all his funds invested, which was an almost total loss and caused his bankruptcy. This fact negatives any assumption that the representations as to the profits to be realized by the investors were knowingly made falsely, with intent to cheat and defraud the investors.

The evidence in the case fails to prove, beyond a reasonable doubt, that either plaintiff in error was guilty of conspiracy in manner and form as charged in any count of the indictment.

The judgment of the Appellate Court is reversed as to each plaintiff in error.          *Judgment reversed.*