(No. 31148.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RICHARD WEST, Plaintiff in Error.

*Opinion filed May 18, 1950.*

RICHARD WEST, *pro se.*

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, and RUDOLPH L. JANEGA, both of Chicago, of counsel,) for the People.

Mr. Chief Justice Thompson delivered the opinion of the court:

Plaintiff in error, Richard West, hereinafter referred to as defendant, sued out this writ of error to review a judgment of the criminal court of Cook County. The trial was before the court without a jury, under an indictment consisting of three counts. The first two counts charged him with obtaining money under false pretenses and the third with obtaining money and property by means of the confidence game. He was convicted on the third count, and, after motions for a new trial and in arrest of judgment were overruled, he was sentenced to the penitentiary for a period of from five to ten years.

The evidence shows that Oscar Hirschel was operating a currency exchange at 3953 Sheridan Road in the city of Chicago, and the defendant was engaged in business in the State of Ohio, as well as the city of Chicago. Between the months of September, 1946, and January 23, 1947, defendant was often in the currency exchange for the purpose of cashing checks. During that time, according to the testimony, about 30 or 40 checks were cashed in the usual course of business, amounting to around $30,000 or $40,000, and there was no loss, although the prosecuting witness testified several checks bounced but were made good by the defendant. On January 23, 1947, the defendant, in the usual manner, presented a check for $900, which was cashed as others had been cashed in the preceding months. This check was placed in the regular course for payment and came back marked "account closed," same being the first check wherein it is claimed the currency exchange suffered a loss. The controversy raged from this point. Another check dated February 3, 1947, in the sum of $1000, was given to the prosecuting witness and was returned "N.S.F." From that time until there was an indictment returned October 1, 1947, there were considerable dealings between the prosecuting witness

and the defendant as to the payment of the money on these checks. It is urged that the $1000-check was made for the purpose of taking up the $900-check which had formerly been returned marked "account closed." Finally, certain notes were given by the defendant to the prosecuting witness to cover the loss by reason of the returned checks. In February, 1948, after the indictment had been returned, the prosecuting witness accepted a $100-payment on account of the loss, and the evidence discloses that he held notes in the sum of $1800. The record further shows there was so much said between the dates of the alleged offense, the indictment and the final trial, that it is impossible to determine what, in fact, transpired between the parties. After the indictment was returned on October 1, 1947, and between the date of the trial on June 4, 1948, or during the time of negotiations between the parties, the cause was continued eleven times, reassigned two times, stricken from the docket with leave to reinstate, again reinstated on the trial docket and transferred to the Chief Justice for reassignment, finally resulting in a trial before the court on June 4, 1948.

It is apparent from the record in this case that if confidence was obtained, it must have been by reason of the course of regular business dealings between the defendant and the prosecuting witness. The rule is that in order to constitute the crime of confidence game it is necessary that there be more than confidence reposed in the swindler. Where the confidence of the injured party is honestly obtained through a course of regular business dealings and the one in whom the confidence is reposed breaches that confidence to the injury of the one reposing it, the statute defining and punishing the confidence game is not violated. (*People* v. *Gould,* 363 Ill. 348; *People* v.*Snyder,* 327 Ill. 402; *People* v. *Benton,* 324 Ill. 331; *People* v. *Perlmutter,* 306 Ill. 495.) Where the property is obtained by unlawful means other than by fraudulently obtaining the

confidence of the victim and abusing the confidence so obtained, a conviction of the crime of confidence game cannot stand. *People* v. *Gould,* 363 Ill. 348; *People* v. *Snyder,* 327 Ill. 402; *People* v. *Benton,* 324 Ill. 331; *People* v. *Perlmutter,* 306 Ill. 495; *People* v. *Ingravallo,* 309 Ill. 498; *People* v. *Koelling,* 284 Ill. 118; *People* v. *Gallowich,* 283 Ill. 360.

The gist of the crime of obtaining money by means or use of the "confidence game" is the obtaining of the confidence of the victim by some false representations or device, and it covers any scheme whereby a swindler wins the confidence of one and then swindles him of money or property by taking advantage of the confidence, and the form of the transaction is immaterial. (*People* v. *Heinsius,* 319 Ill. 168; *People* v. *Peers,* 307 Ill. 539; *People* v. *Rosenbaum,* 312 Ill. 330.) Before a defendant can be found guilty of the charge of the confidence game the intent to swindle the complaining witness must be proved beyond a reasonable doubt. (*People* v. *Heinsius,* 319 Ill. 168; *People* v. *Massie,* 311 Ill. 319; *People* v. *Santow,* 293 Ill. 430; *People* v. *Koelling,* 284 Ill. 118.) The offense of confidence game consists in gaining possession of money or property by some trick or device or any swindling operation by which advantage is taken of the confidence which the victim has reposed in the swindler. *People* v. *Rosenbaum,* 312 Ill. 330.

Up to the time the check was returned marked "account closed," these parties were proceeding in a normal course of business, and there was nothing in the testimony to indicate that such confidence was inspired by anything that was said or done in connection with depositing the checks, as they were deposited in the usual course of regular business dealings. Under such circumstances, this could not be called a confidence game. To say that the defendant here was working up any scheme or had any intent to swindle is considerably weakened by the fact that the evidence

shows he transacted around $30,000 or $40,000 worth of business with the prosecuting witness, with no loss, and the $900-check transaction was the first loss that appeared over the several months' period in which time thirty or forty checks had gone through the exchange. This falls far short of proving any scheme or intent to swindle. The intent to swindle must exist at the time of the transaction and must be proved beyond a reasonable doubt. In view of the normal transactions appearing from the record here such proof was not made.

After a careful analysis, the evidence on which this judgment of conviction is based is of such an unsatisfactory character that we are of the opinion the judgment should be reversed and the cause remanded for a new trial. It is unnecessary to consider other errors in this case as they will, no doubt, be obviated on another trial.

*Reversed and remanded.*