People of the State of Illinois, Plaintiff-Appellee, v. Walter Radford, Otherwise Called William Rowe (Impleaded), et al., Defendants-Appellants.

Gen. Nos. 50,874, 50,875 and 50,876.

First District, First Division.

April 3, 1967.

Rehearing denied May 18, 1967.

417

Jay A. Schiller, of Chicago, for appellants.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

After being jointly indicted and tried before a jury, defendants were found guilty of conspiracy and sentenced. On appeal, defendants assert trial errors and that the State failed to prove the material allegations of the indictment. Defendants' separate appeals were consolidated here.

The indictment shows that six persons were jointly indicted for the offense of conspiracy to commit theft of property in excess of $150 in value, "that is to say, they intentionally and knowingly agreed to obtain by deception control over lawful money . . . the property of the Continental Casualty Company, a corporation, intending to permanently deprive the said Continental Casualty Company of the use and benefit of said property." The indictment further alleged the details of self-inflicted injuries, a deliberate automobile collision and the filing of actions for damages against the Keeshin Transport System, "in violation of Chapter 38, Section 8–2, of the Illinois Revised Statutes 1963."

Of the six indicted, two testified for the State at the trial of the three instant defendants, Walter Radford (otherwise known as William Rowe), Douglas McGhee, and Raymond Howard. The jury found the defendants "guilty of conspiracy in manner and form as charged in the indictment." Howard was placed on probation for two years, with the first 90 days to be served in the House of Correction. McGhee was sentenced from one to two years in the penitentiary. Radford was sentenced from four to five years in the penitentiary.

John Harrell and Wilson Thomas, Jr., the two conspirators who testified for the State, related in detail the planning and the execution of the injuries and the collision. Early in May, 1963, defendant Walter Radford went to the house of John Harrell. Radford drove Harrell to a meeting with defendants Howard and Mc-Ghee, who, Radford told Harrell, had already agreed "about having their arms and legs broken." Radford offered Harrell "$400 for breaking Raymond Howard's or Douglas McGhee's arm or leg, whichever one wanted the leg or arm broke." Later, at Radford's home, and in the presence of Douglas McGhee, Raymond Howard, Harrell, and Wilson Thomas, Jr., who had a broken arm

419

in a cast, Radford told them he "had witnessed Wilson Thomas, Junior's accident, and he had taken him to a lawyer," who had already turned down a settlement offer of $5,000. Later that afternoon, McGhee and Howard decided not to go through with the plan.

On May 16, 1963, Radford again met with Harrell, McGhee and Howard, and said, "This is the day we are going to have the accident," and McGhee and Howard agreed to go ahead with the plan. Later, they all met with Wilson Thomas, Jr., and he introduced Radford to Richard Singleton, and Radford "told Singleton that he could make a whole lot of money by just driving this car in a set up accident." Radford and Harrell then picked up two cement blocks and put them in the trunk of Radford's car. In the afternoon of the 16th, Radford said to McGhee and Howard, "Which would you want, your leg broke? Or which one wants your arm broke. The one with the leg can collect more money than the one with the arm broke." McGhee and Howard flipped a coin to determine which one would get the broken leg, and "Raymond Howard won. He was the one that would break his leg and Douglas McGhee would break his arm." Radford then "told Singleton that he was to be the driver of the car that was going to be involved in the accident, along with two other passengers, Raymond Howard and Douglas McGhee; . . . that he would give the signal by giving two blasts from the horn, and for Richard Singleton to get his car in front of the truck so that he could cut Richard Singleton off when the truck hit him."

Later that evening, May 16, 1963, McGhee's arm was placed on the two cement blocks, and Harrell broke the arm with an automobile axle. The same procedure was repeated with Howard's leg, after some persuasion and threats. Radford, Thomas, Singleton and Harrell helped

McGhee and Howard into the rear of Singleton's car. Then Radford, with Harrell and Thomas in his car, and Singleton, with McGhee and Howard in his car, drove to the Dan Ryan Expressway, and Singleton got in front of a Keeshin Transport System truck, driven by Rex Flowers. At approximately 10:00 p. m., while southbound at about 55th Street, Radford cut off Singleton's car, Singleton slammed on the brakes, and the Keeshin truck hit Singleton's car. Flowers stopped the truck, put out warning flares, and "talked to some fellow who came there and wanted to know if I needed a witness to the accident. He said he saw it. He gave me a name and address." The name was Hansen, and "I gave the card to the company, for insurance." Flowers was informed that two men were injured.

A traffic police officer assigned to patrol the Ryan Expressway, and who arrived at the scene of the occurrence within a few minutes, testified that Howard and McGhee were in the back of Singleton's car, conscious and moving. He noticed the skid marks were unusual, and the brake lights were disconnected. Radford told him that he was a witness.

A claim representative for the Continental Casualty Company testified that on May 17, 1963, he was assigned to investigate the occurrence. He attempted to locate the one witness, Arthur Hansen, 4805 South Forrestville Avenue, Chicago, and "I didn't find him. . . . He wasn't living there. He wasn't known there." He never made contact with Hansen. Harrell testified that it was Radford who told the truck driver that his name was Arthur Hansen, and that he gave "4805 South Forrestville" as his address.

Over the objection of defendants, the court received in evidence, as State's exhibits, certified copies of personal injury complaints filed in the Circuit Court of Cook County on behalf of Howard and McGhee for $75,-

000 each. No testimony was offered on behalf of the defendants.

■■ Considering the trial errors complained of, we find no error in the court's denial of defendant Radford's motion for a more complete answer to his request for a bill of particulars. The State's answers included the date, time and place of the occurrence, and offered "to furnish the statement of John Harrell which covers the details of each of these alleged transactions." We consider that the indictment and the answers of the State sufficiently specified the particulars of the offense, so as to enable the defendants to prepare their defense. This was a matter for the sound discretion of the court, and we find no abuse of discretion in denying the motion. People v. Petrilli, 344 Ill 416, 419, 176 NE 437 (1931).

Defendant Radford next complains that he was seriously prejudiced when the State questioned Wilson Thomas, Jr., an accomplice witness, as to whom he meant when he referred in his testimony to "Willie," and the witness answered, "Walter Radford." He was then asked by the State, "What name do you know him by?", and the witness responded with four alleged aliases. It is argued that this inquiry was made for the sole purpose of prejudicing the jury and calling the attention of the jury that Radford "used many aliases as is often done by men with prior criminal records."

■■ We agree with defendants that "it is never the duty of the State's Attorney to resort to unfair and improper methods to secure a conviction." (People v. Jackymiak, 381 Ill 528, 46 NE2d 50 (1943).) We have examined the record on this point, and we find no error. Defendant Radford was named in the indictment with an alias "William Rowe." It was proper to connect the testimony about "Willie" with defendant Radford and not improper to further inquire "What name do you

know him by?", even though the answer given included four alleged aliases.

Defendants next contend that the court improperly allowed into evidence the certified copies of the two lawsuits which had been filed in the Circuit Court. The defendants argue, "These law suits were, in fact, not brought by the defendants, McGhee and Howard, as alleged in the indictment, but by McGhee's father and next friend, Mack McGhee, and by Howard's mother and next friend, Ora Lee Henderson. It is old established law that it is not necessary that an infant have any knowledge of a suit brought by his next friend and, indeed, it may even be maintained against his wish. . . . No presumption can even be permitted against an infant party to an action, therefore, the State has no right to even presume that the defendants knew of the existence of the law suits they are charged with having brought. The court has gone so far as to say that every presumption is to be indulged in the infant's favor. . . . The law suits were signed by Attorneys and brought by their parents. They were, in no way, connected up directly with the defendants themselves."

■ This contention is without merit. The testimony of Harrell and Thomas indicates that personal injury suits for the self-inflicted injuries were part of the plan. Howard and McGhee were then infants, which required that the lawsuits be brought in their behalf by a next friend. Furthermore, at the time of the trial both defendants were of legal age, and there was nothing in the record to indicate that the suits had been discontinued. We consider that the evidence sufficiently connected Howard and McGhee with the two complaints at law, and their admission into evidence as exhibits for the State was proper.

Finally, defendants contend, "The most grave error in the trial, and the one in which the defendants urge

most strenuously that this court seriously consider, was caused by the State failing to present any evidence proving that the defendants conspired to deprive the Continental Casualty Company of their property. . . . When the party, against whom a conspiracy is aimed, is named in the indictment for conspiracy, it is not sufficient to prove a conspiracy to defraud the public generally, or any person whom the defendants might meet, but the proof must establish the defendants' guilt of the particular charge set forth in the indictment." Cases cited include Lowell v. The People, 229 Ill 227, 82 NE 226 (1907), where the court said (p 237):

> "It cannot be said that the allegations of a conspiracy with the intent to cheat and defraud Jackson are sustained by proof of an intent to cheat and defraud the public generally."

In People v. Mader, 313 Ill 277, 145 NE 137 (1924), the court said (p 285):

> "To constitute the crime of conspiracy there must be more than one person guilty thereof, and before a defendant can be convicted of conspiracy the evidence must show that there are two or more persons guilty of such conspiracy. . . . It is not sufficient to sustain a conviction on a particular charge to prove that the defendant is guilty of some other charge or of generally bad and criminal conduct, but the proof must establish his guilt of the particular charge in the indictment. Lowell v. People, 229 Ill 227."

Defendants further assert that the State failed to produce any evidence that these defendants ever had any dealings with Continental Casualty Company, ever made a claim against the Continental Casualty Company, or ever spoke to any representative of Continental Casualty Company, either directly or indirectly.

The State asserts that it was unnecessary for the State to prove that the conspiracy was directed toward the property of Continental Casualty because "conspiracy is a victimless crime. It consists of an intentional act of agreement with another to commit an offense. It is proved by showing agreement and an overt act in furtherance of the agreement."

The State further argues that in Illinois the identity of the intended victim of a conspiracy is not a material element of the crime of conspiracy and need not be alleged in the indictment (People v. Beeftink, 21 Ill2d 282, 171 NE2d 632 (1961)), and if the allegation was not material, it need not be proved, even though contained in the indictment. People v. Andrews, 327 Ill 162, 158 NE 462 (1927).

In People v. Peppas, 24 Ill2d 483, 182 NE2d 228 (1962), our Supreme Court said (p 486):

> "It is well settled that in an indictment for conspiracy to commit a felony it is sufficient to designate the felony intended to be committed by such description as will apprise the defendants of the exact charge upon which they will be tried. It is not required that the felony be described with the same accuracy as would be required in an indictment for the felony itself. People v. Beeftink, 21 Ill2d 282, 290."

And on page 487:

> "The gist of the crime of conspiracy is the unlawful agreement to accomplish an unlawful purpose. It is, therefore, unnecessary to allege the means by which the act or object of conspiracy is to be accomplished."

In People v. Walker, 60 Ill App2d 178, 208 NE 2d 840 (1965), this court said (p 187):

425

"Although the indictment did particularize the Allstate Insurance Company as the victim, the crime of conspiracy had been concluded before the initial communication with the insurer. It was sufficient to show an unlawful combination to obtain the money or property of any person belonging to the class known as the public. . . . The reference in the indictment to Allstate Insurance Company and its property 'might be regarded as mere surplusage.' (People v. Rogers, 303 Ill 578, 583, 136 NE 470 (1922).) . . . The specific victim of the conspiracy at the moment of the agreement was unknown to the conspirators, but it was intended to be 'any person belonging to the class known as the public.' "

 The instant offense of conspiracy was committed when the conspirators made their agreement and then, in furtherance of that agreement, committed the acts alleged and proved by the State. The proof by the State that Continental Casualty was the intended victim of the conspiracy might be deemed insufficient, but the inclusion of the description of Continental Casualty as the intended victim of the conspiracy was unnecessary. When the conspirators made their agreement, the specific victim of the conspiracy was unknown to the conspirators but was intended to be "any person belonging to the class known as the public," or anyone who might be required to pay damages for defendants' self-inflicted personal injuries, whether an insurance company, a private person or a corporation. The indictment was sufficient to enable the defendants to prepare their defense and to plead any judgment as a bar to a subsequent prosecution for the same offense. Therefore, we hold that the reference in the instant indictment to the Continental Casualty Company was "mere surplusage," and the evidence in the record sustains the conviction of

these defendants of the crime of conspiracy as charged in the indictment.

For the reasons given, the judgments of the Circuit Court against Raymond Howard, otherwise called Raymond Howard Henderson (Appeal No. 50,874), Douglas McGhee (Appeal No. 50,875), and Walter Radford, otherwise called William Rowe (Appeal No. 50,876), be and the same are hereby affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.