(No. 11290.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HENRY R. CRAWFORD, Plaintiff in Error.

*Opinion filed April 19, 1917.*

1. CRIMINAL LAW—*when prosecutor may be required to elect upon which charge he will proceed.* It is proper to state the same offense in different ways in as many counts of an indictment as the pleader may think necessary, even though the judgment on the several counts be different, provided all the counts are for felonies or all for misdemeanors, but where two or more distinct felonies are charged in the same indictment it may be quashed or the prosecutor compelled to elect upon which charge he will proceed.

2. SAME—*evidence of similar offenses is admissible in prosecution for obtaining money by means of the confidence game.* In a prosecution for obtaining money by means and by use of the confidence game, other offenses committed by the defendant similar to the one for which he is being tried are admissible to show guilty knowledge and intent.

3. SAME—*when instruction as to obtaining money by means of confidence game is not erroneous.* An instruction as to the nature of the crime of obtaining money by means and by use of the confidence game is not erroneous where it is in the language of the statute and is given simply to inform the jury generally as to the law of the case.

4. SAME—*when one who receives a payment on a mortgage is guilty of the confidence game.* A mortgagee who sells a note and mortgage but does not disclose that fact to the mortgagor or the latter's grantee but continues to receive payments of interest and finally a payment of the principal, which he appropriates to his own use, is guilty of obtaining the money by means of the confidence game, where he did all that was necessary to induce the be-

lief that he still owned the note and mortgage; and the fact that the debtor did not require the mortgage and note to be produced before payment but relied upon the mortgagee's promise to send them later does not change the situation, where the mortgagee did actually release the mortgage of record.

DUNN and DUNCAN, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Montgomery county; the Hon. J. C. McBRIDE, Judge, presiding.

J. E. HOGAN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, J. EARL MAJOR, State's Attorney, C. W. MIDDLEKAUFF, and ARTHUR R. ROY, (AMOS MILLER, of counsel,) for the People.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

An indictment was returned against plaintiff in error by the grand jury of the circuit court of Montgomery county at the April term thereof, said indictment containing eight counts, five of the counts charging plaintiff in error with embezzling the money of Robert Saxby, Jr., and three of the counts charging him with obtaining a check from Saxby by means and use of the confidence game. A motion was made by the defendant to quash the indictment, which was overruled, and at the November term, 1916, of said court the defendant was put on trial before a jury. During the trial the People offered evidence of similar transactions, and objection was made on the ground that it was improper because of the embezzlement charges in the indictment. Upon motion of the defendant the court ruled the State's attorney to elect under which counts to proceed, and that the testimony would be excluded if the embezzlement counts remained in the indictment. The State's attorney elected to proceed under the confidence game counts, and a verdict of not guilty was directed as to the embezzlement counts. When the evidence for the People was in, the defendant

submitted a peremptory instruction directing a verdict of
not guilty, which was refused. The defendant then rested
without offering any testimony in his own behalf, and after
argument of counsel and instructions by the court on be-
half of both the People and the defendant the jury returned
a verdict finding the defendant guilty. Motions for a new
trial and in arrest of judgment were respectively overruled,
to which exceptions were taken, and the court entered judg-
ment upon the verdict. The defendant has sued out this
writ of error.

The errors complained of and relied upon to reverse the
judgment of the lower court are the refusal to quash the
indictment, the admission of improper testimony on behalf
of the People, the giving of improper instructions on behalf
of the People, and the refusal to give the peremptory in-
struction submitted at the close of all of the evidence in the
case. It is also urged that the verdict and judgment are
manifestly against the weight of the evidence and the law,
as the evidence entirely fails to make out a case of confi-
dence game.

There is no dispute as to the facts of the case, which, as
disclosed by the evidence, are as follows: The defendant is
about forty-seven years of age and had been engaged for
several years in the real estate and loan business and mak-
ing abstracts in Hillsboro, Illinois. He was in the habit
of loaning money on real estate, taking notes secured by
mortgages in his own name and selling the notes to other
parties. On June 16, 1913, William E. Newsome borrowed
$400 of the defendant and executed and delivered his note
of that date, payable to the defendant at his office, for said
sum, due three years from date, with annual interest pay-
ments, also payable at the office of the defendant, and also
gave a mortgage, executed by himself and wife, to defend-
ant upon a lot in the city of Litchfield. The defendant on
July 17, 1913, sold and transferred the note, by indorse-
ment on the back thereof, to Helena Huber, a resident of

Montgomery county, but did not assign the mortgage, and delivered the note and mortgage to her. He had had other dealings with Mr. and Mrs. Huber and they apparently trusted him, and the note was left by Mrs. Huber, together with the unassigned mortgage, in a safety deposit box in defendant's office. The transaction took place at the office of defendant, and Godfrey Huber, husband of Helena Huber, was also present and was given the key to the safety deposit box. A few months later Newsome sold and conveyed the real estate described in the mortgage to Robert Saxby, Jr., the complaining witness in the case. The grantee by said conveyance assumed and agreed to pay said mortgage indebtedness of $400. Saxby had no notice or knowledge, either from the county records or otherwise, that the defendant had assigned the note, and did not know that the note, secured by said mortgage, had been transferred and delivered by the defendant to Mrs. Huber and was owned by her but supposed it was owned by the defendant. He paid interest at different times to the defendant, who accepted the interest but did not state that he was no longer the owner of the note. On July 4, 1915, Saxby called at the office of defendant and informed him that he desired to pay said note and the interest to that date, bringing with him an abstract of title to the property described in the mortgage which the defendant had originally made. The defendant computed the interest on the loan to that date and wrote a check for the sum of $403.20, being the amount of the principal and interest to that date, said check being made payable to himself and drawn on the Litchfield Bank and Trust Company, where Saxby had an account. Having prepared the check the defendant handed it to Saxby to sign, which he did and delivered it to the defendant, who afterwards indorsed it with his name, deposited it to his account in a bank and collected and used the proceeds thereof. He also wrote upon the abstract brought in by Saxby a release of the $400 mortgage, signing it as "abstracter." At

the defendant's suggestion he and Saxby went to the recorder's office in the court house, which was near by, and the defendant released the mortgage upon the margin of the record in the presence of one of the deputies in the office. The defendant stated at that time that he did not release a mortgage of record for everybody until he knew the check was good but he would do it for Saxby. He also told Saxby, on returning to his office, that he would mail the note and mortgage to him within a few days. He never sent or delivered the note and mortgage to Saxby. Defendant did not pay to Mrs. Huber any part of the $403.20 paid him by Saxby, and did not even inform her that he had collected the principal and final interest due on the note or that he had released the mortgage of record. Mrs. Huber had not given the defendant authority to collect the principal of the note nor to release the mortgage securing same. When defendant had collected former installments of interest he had paid them to Mrs. Huber, she going to his office and getting the $400 note out of the safety deposit box, and after the interest payment was indorsed by Crawford she returned the note to the box, locked it and kept the key.

As to the indictment, while it is not proper to include separate and distinct felonies in different counts of the same indictment it is proper to state the same offense in different ways in as many different counts as the pleader may think necessary, even though the judgment on the several counts be different, provided all of the counts are for felonies or all for misdemeanors. So a count for larceny may be joined in an indictment for burglary. (*Lyons* v. *People,* 68 Ill. 271; *Bennett* v. *People,* 96 id. 602.) In cases of felonies, where two or more distinct offenses are charged in the same indictment, it may be quashed or the prosecutor compelled to elect upon which charge he will proceed. (*Kotter* v. *People,* 150 Ill. 441.) In the case at bar the trial court ordered the State's attorney to make an election as to the counts on which he would rely. This was done, and the counts charg-

ing confidence game were the only ones on which the defendant was tried.

The evidence complained of was that of transactions similar to that charged in the indictment. The defendant had taken a note and mortgage from one Voyles and assigned the note and delivered the note and mortgage to Miss Mades. Voyles paid the interest on the note to the defendant for several years and the defendant turned it over to Miss Mades. In 1912 Voyles paid the defendant $200 on the principal, but the defendant did not inform Miss Mades of that fact and never paid her the $200 but converted same to his own use. Thereafter, when Voyles paid the interest in 1913, 1914 and 1915, the defendant paid Miss Mades each year $14 more than Voyles paid him or the interest on the original amount. In another case one Atkinson borrowed $800 from defendant and gave his note and a mortgage on real estate to secure the same. The defendant sold the note and mortgage to Mrs. Cratty and delivered the note and mortgage to her. Atkinson left the money to pay this loan with his banker, Emmet McDavid, who called the defendant on the telephone and told him that Atkinson had deposited the money to defendant's credit, and asked the defendant to release the mortgage and send him the note and mortgage. Defendant agreed to release the mortgage and went to the court house and did release the same on the margin of the record. He informed McDavid over the telephone that he did not have the note and mortgage just then but that he would have them in a couple of days and mail them to him. Defendant also noted the release on an abstract to the Atkinson property and sent this abstract to McDavid. The defendant received the proceeds of this note and converted the same to his own use and did not pay any part to Mrs. Cratty, the holder of the note, nor did he return the same to Atkinson. This evidence was stricken from the record, however, and the jury were instructed not to consider it. Another transaction was one in which the

defendant had taken a note and mortgage from Mrs. More-house, which note and mortgage he assigned to David H. Clotfelter, and on his death it became the property of his widow, Margaret J. Clotfelter. In that case, however, Mrs. Clotfelter required the defendant to make an assignment of the mortgage to her and she filed the same for record. The defendant collected the amount of this note but never paid it over to the holder thereof but concealed such fact and continued to pay her interest. All of the transactions testified to are very similar to the one for which defendant was being tried and were offered as tending to show guilty knowledge and intent. It has been held in prosecutions for obtaining money by means of the confidence game that such evidence is proper. *People* v. *Weil,* 243 Ill. 208; *People* v. *Strosnider,* 264 id. 434; *People* v. *Keyes,* 269 id. 173.

Instruction No. 4, which is complained of, was one of a series of instructions. It was in the language of the statute, and was simply given to inform the jury generally as to the law of the case. This was not error. *White* v. *People,* 179 Ill. 356; *People* v. *Cotton,* 250 id. 338.

The seventh instruction informed the jury that even though they believed from the evidence in the case that the transaction of the defendant with Robert Saxby, Jr., assumed and appeared in form to be a business transaction, yet if they believed from the evidence, beyond a reasonable doubt, that the defendant through a scheme or device, and with the purpose of cheating and defrauding Saxby of his check for $403.20, and by a course of conduct led Saxby to repose confidence in him with a view to obtain the property and money of Saxby by a betrayal of such confidence, and by reason of such confidence the defendant obtained the check and property from Saxby and thereby cheated and swindled him, the defendant was guilty of obtaining said check and property by means and use of the confidence game and the jury should find him guilty. It is contended that there is no connection between the first and last parts of

the instruction, and that the jury were told that the defendant would be guilty if by a course of conduct he led Saxby to repose confidence in him. While the instruction is somewhat loosely drawn, we do not think the jury were misled thereby. The jury were directed to find defendant guilty from the evidence surrounding the transaction which the defendant had with Saxby, and his conduct in such transaction, and not from any other conduct of the general course of life or reputation of the defendant. It was the claim of the prosecution that it was the actions of the defendant surrounding the transaction that caused Saxby to repose confidence in him, and we think the instruction directed the jury to those circumstances as shown by the evidence, only, and that the jury so understood it.

It is contended that the facts shown by the evidence do not constitute the crime of obtaining money by the confidence game in any event. As to this, there is no question but that the conduct of the defendant was dishonest and fraudulent. Saxby owed money and was honestly endeavoring to pay it. He paid it to the defendant, to whom he supposed he owed it, not knowing defendant had assigned the note, or that the note and mortgage securing it were not in the defendant's possession. The defendant knew that this money was not owing to him and that he had no right to receive and keep it. No reason appears why he should not have disclosed the fact that he had sold and assigned the note, and the name of the owner, when the interest was first paid him, and if he had been honest he would have done so. It is true that fraud and dishonesty by which one person deprives another of his money or property do not always or necessarily amount to the confidence game, and it is the contention of the defendant in this case that the evidence fails to show any affirmative act on his part to induce Saxby to have confidence in him whereby he was defrauded out of his money. To be guilty of obtaining money by the confidence game there must be some affirmative act

on the part of the accused which at least would tend to cause the person victimized to repose confidence in him. If in this case Saxby had merely given his check to the defendant as a stranger, through a mistake as to his identity or in the belief that he was the party entitled to receive it, without any affirmative act on the part of the defendant other than the acceptance of the check, there might be reason for the argument advanced. As to what actions or representations would amount to obtaining money or property by the confidence game, it would depend largely on the device employed, and as said in *Morton* v. *People,* 47 Ill. 468, "these devices are as various as the mind of man is suggestive." Can it be said that there was no affirmative act on the part of the defendant by which the confidence of Saxby was secured so that the fraud and swindle were perpetrated? Without repeating the details of the transaction, it cannot be denied that he did all that was necessary to induce in Saxby the belief that he was authorized to receive his check and release the mortgage. His taking the check and going to the court house and releasing the mortgage of record, his conduct and conversation generallly, his promise to send the note and mortgage to Saxby in a few days, his entire concealment of the truth as to the ownership of the note and mortgage or his right to receive the money, were the main causes which induced Saxby to part with his check and property. It is true that as a matter of business precaution Saxby should have demanded the production and cancellation of the note and mortgage, but that does not relieve the culpability of the defendant. If every victim of a swindle by means of the confidence game would act with more business prudence, then prosecutions for crimes of that nature would be limited to attempts to obtain money or property by means of the confidence game and not for actually obtaining it. In *Hughes* v. *People,* 223 Ill. 417, it was held that the statute relating to the confidence game is violated whenever one person by his course

of conduct has led another to repose confidence in him with a view to obtain the money or property of such other and which is obtained by the betrayal of the confidence so reposed. In *People* v. *Poindexter,* 243 Ill. 68, it was held that any swindling scheme whereby a swindler wins the confidence of his victim and swindles him out of his money by taking advantage of such confidence is a confidence game.

It would serve no useful purpose to set out the different authorities in which various schemes and swindling operations have been held to constitute the confidence game. In the case at bar the prosecuting witness, Saxby, was defrauded and swindled out of his money by the defendant. To induce Saxby to part with his check the defendant by his actions and conduct, as well as by his words, induced Saxby to think he was the proper person to receive and receipt for such money and discharge him of the obligation. There can be no doubt from the evidence that the acts of the defendant were with the intent to defraud and swindle Saxby and deprive him of his money and property, and that the defendant was properly convicted.

In the closing argument the State's attorney, referring to the argument of counsel for defendant, said: "The only mistake that he hopes to be made would be that the jury would turn a guilty man loose." An objection was made, which was sustained by the court, and the State's attorney added the words, "as the evidence in this case shows." We do not think the defendant was unduly prejudiced by such remark.

Finding no errors sufficient to justify a reversal the judgment of the circuit court will be affirmed.

*Judgment affirmed.*

DUNN and DUNCAN, JJ., dissenting.