(No. 15189.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PETRUS PEERS, Plaintiff in Error.

*Opinion filed April 18, 1923.*

1. CRIMINAL LAW—*what necessary to conviction of attempt to obtain money by confidence game.* A party cannot be convicted of an attempt to obtain money by means and by use of the confidence game unless all the elements necessary to a conviction of the substantive crime have been proved except the consummation.

2. SAME—*what constitutes the confidence game.* The crime of obtaining money or property by means and by use of the confidence game includes any swindling device whereby the swindler, having won the confidence of his victim, (which is the gist of the offense,) obtains his money or property by taking advantage of such confidence; and if the transaction is, in fact, a swindling operation, it is immaterial that it assumes the form of a business transaction.

3. SAME—*element of confidence is necessary to prove crime of confidence game.* A swindling operation does not constitute the confidence game unless the element of confidence is present, and it is not enough to show that there has been an obtaining of money by false pretenses.

4. SAME—*what constitutes crime of obtaining property by false pretenses.* Any designed misrepresentation of an existing condition by which a party obtains goods of another is a false pretense within the meaning of statutes making it a crime to obtain property by false pretenses.

5. SAME—*obtaining insurance by false representation of insured does not constitute crime of confidence game.* The obtaining of money from an insurance company by a false answer to any matter of fact material to the inquiry, knowingly and willfully made with the intent to deceive the insurer, may constitute the crime of obtaining money by false pretenses but does not constitute the confidence game, and one who insured his automobile after it was wrecked and has attempted to collect the insurance by mis-dating the report of loss cannot be prosecuted for an attempt to obtain money by means of the confidence game.

6. SAME—*crimes of confidence game and obtaining money by false pretenses are clearly distinguishable.* The crimes of obtaining money by false pretenses and by the confidence game, as respectively defined by sections 96 and 98 of the Criminal Code, are clearly distinguishable, as it cannot be presumed that the legislature intended to make the same transaction a misdemeanor under one section and a felony under the other.

WRIT OF ERROR to the Circuit Court of Kankakee county; the Hon. A. W. DESELM, Judge, presiding.

HARRY D. PARKER, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ANKER C. JENSEN, State's Attorney, and EDWARD C. FITCH, for the People.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

The grand jury of the circuit court of Kankakee county returned an indictment against Petrus Peers, plaintiff in error, at the May term, 1922, consisting of ten counts, the first four charging him with attempting to obtain the money and property of the Auto Owners Insurance Agency, an Illinois corporation, by means and by use of the confidence game, and the last six counts charging him with an attempt to obtain the money and property of the Auto Owners Protective Exchange, "an association of persons organized and doing business under and by virtue of a license issued under the laws of the State of Illinois," by means and by use of the confidence game. A trial at that term of court resulted in a disagreement. At the following October term Peers was convicted, the jury returning a general verdict of guilty, and he was sentenced to the penitentiary. This writ of error is prosecuted to review that judgment.

Peers lived and conducted his business at Sollitt, Kankakee county, Illinois. January 15, 1922, an Essex automobile owned by him was wrecked in a collision. Sherman J. Potter, an agent for the Auto Owners Protective Exchange, was in Peers' place of business when the accident was reported, and he reminded Peers that he had theretofore solicited him for insurance, and asked him if he wasn't sorry that he had not taken a policy. Peers asked if he

could recover for the damages to his machine which had occurred if he would then take a policy, and Potter replied that he probably could if he were clever enough. The following day Potter, who lived in Kankakee, the headquarters of his employer, returned to Sollitt and again solicited Peers to become a subscriber in the exchange. Peers again asked him about turning in a claim for the damages that had occurred to his car, and Potter told him that he ought to wait three or four days before he filed his claim and that he should then date it three or four days after the date of the policy. Peers signed an application blank applying for membership in the Auto Owners Protective Exchange and gave Potter his check for $12.50. Potter returned to Kankakee and delivered the application and the check to the exchange and a policy was thereupon issued to Peers. Potter received $5 as his agent's commission. He did not advise the officers of the exchange that the car that was being covered was a wreck, or that he had suggested to Peers that he might, by filing a fraudulent claim, secure compensation for the damages resulting from the collision. January 18 Peers mailed to the Auto Owners Protective Exchange a "Report of Loss," describing the car and the collision and the damages to the car resulting therefrom, which had, in fact, occurred January 15 but which in his report he stated occurred January 18. The space provided for the amount of damage done to the machine was left blank. He gave as a list of damaged parts, a broken wheel, bent axle, bent fender, bent frame, and indicated that the block of the engine might be broken. When this report of loss was received at the head office of the exchange, in Kankakee, Potter advised the officers of the true date of the collision but did not advise them that he had suggested the procedure which Peers followed. Thereafter the exchange mailed to Peers a "Proof of Loss" blank, and Peers executed this document and acknowledged the same before a notary public. Thereafter a garage bill for $115 was mailed to the

exchange. Peers' policy was canceled but his payment of $12.50 was not refunded.

There is no evidence whatever of an attempt to obtain the money or property of the Auto Owners Insurance Agency, and there is no proof that the Auto Owners Protective Exchange is a person, natural or artificial, that was capable of holding title to property.

There is no evidence in the record justifying a conviction for confidence game if the criminal design had been consummated, and so there can be no conviction for an attempt to obtain money by means and by use of the confidence game, for to sustain such a charge all of the elements of the substantive crime must be proven except the consummation. (*Graham* v. *People,* 181 Ill. 477.) The confidence game statute was designed to reach that class of offenders known as "confidence men," who practice swindling schemes as various as the mind of man is suggestive, upon unwary victims. The gist of the crime is the obtaining of the confidence of the victim by some false representation or device. (*People* v. *Perlmutter,* 306 Ill. 495; *People* v. *Gallowich,* 283 id. 360.) It covers any scheme whereby a swindler wins the confidence of his victim and then swindles him of his money or property by taking advantage of the confidence fraudulently obtained. If the transaction is, in fact, a swindling operation, it is immaterial that the form assumed is that of a lawful business transaction. (*People* v. *Singer,* 288 Ill. 113; *People* v. *Keyes,* 269 id. 173.) But a swindling operation does not constitute the confidence game unless the element of confidence is present. (*People* v. *Rallo,* 293 Ill. 304; *People* v. *Santow,* id. 430.) It is not enough to show that there has been an obtaining of money by false pretenses. (*People* v. *Koelling,* 284 Ill. 118.) Broadly stated, any designed misrepresentation of an existing condition by which a party obtains goods of another is a false pretense under statutes making it a crime to obtain property by false pretenses. (*Jackson* v. *People,*

126 Ill. 139.)    There is no element of confidence in the
transaction involved in this case unless it might be said that
Peers had confidence in Potter.    Insurance companies do
not pay claims because they have confidence in the insured.
They pay them because the insured brings his claim within
the terms of the insurance contract by the proof submitted.
The transaction is wholly impersonal and the relation is
purely contractual.    The object of the provisions of the in-
surance contract requiring the insured to submit himself to
an examination is to enable the insurer to possess itself of
all knowledge and all information as to other sources of
knowledge of facts material to its rights, to enable it to
determine its obligation and to protect itself against a false
claim.    A false answer to any matter of fact material to
the inquiry, knowingly and willfully made with the intent
to deceive the insurer, is fraudulent.    If it accomplishes its
object it is fraud effected; if it fails it is a fraud attempted.
If the facts in this case constitute the confidence game, then
section 96 of the Criminal Code is meaningless, because the
pretenses covered by that section are wholly and completely
included within the terms of section 98.    It will not be pre-
sumed that the legislature intended to make one and the
same transaction a misdemeanor under one section of the
Criminal Code and a felony under another section.    The
crimes defined by the two sections are clearly distinguish-
able.    If A signs his name to a check and falsely represents
to B that he has funds in the bank to pay the check, and
B gives him cash in exchange for the check relying upon
the false representation, A is guilty of obtaining B's money
by false pretenses and is subject to prosecution under sec-
tion 96 of the code.    If A signs a fictitious name to a check
and by false and fraudulent means obtains the confidence of
B, thereby inducing B to deliver him money on the bogus
check, then A is guilty of obtaining B's money by means
and by use of the confidence game and is subject to prose-
cution under section 98 of the code.    To carry the illustra-

tion further: If A falsely signs the name of another person to a check and passes this forged check as true and genuine, with intent to defraud another, he is guilty of forgery and is subject to prosecution under section 105 of the code. If the facts in this case warrant the conviction of Peers for any offense it is an attempt to obtain the property of the subscribers of the Auto Owners Protective Exchange by a false pretense.

The judgment is reversed.        *Judgment reversed.*