(No. 17927.—Judgment reversed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* J. C. BENTON, Plaintiff in Error.

*Opinion filed February 16, 1927.*

1. CRIMINAL LAW—*proof of swindling operation is necessary to establish crime of confidence game.* To constitute the crime of confidence game it is necessary that there be more than confidence reposed, and unless there is proof of a swindling operation, trick or device in which advantage is taken of the confidence reposed by the victim in the swindler the crime is not established.

2. SAME—*what is not sufficient to constitute the crime of confidence game.* The facts that the parties stand in a confidential relationship and that one is thereby induced to adopt the business judgment of the other, which turns out to have been imprudent and as a result of which both lose money, are not sufficient to constitute the crime of confidence game.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WORTH E. CAYLOR, Judge, presiding.

JACOB LEVY, and JAMES M. GWIN, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, and ROBERT E. CROWE, State's Attorney, (HENRY T. CHACE, JR., EDWARD E. WILSON, and JOSEPH H. NICOLAI, of counsel,) for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of obtaining the money and property of Mahala T. Cronkhite by means and by use of the confidence

game. The indictment consisted of two counts, the first charging confidence game, and the second larceny. The jury returned a verdict of guilty under the first count, and the defendant brings the case here by writ of error.

The first contention of plaintiff in error is that the evidence does not support the verdict. The property charged in the indictment to have been procured by means of the confidence game consisted of five bonds of $1000 each, four bonds of $500 each and ten bonds of $100 each. The only testimony offered on behalf of the State tending to establish the charge of confidence game was that of the complaining witness. There is practically no dispute concerning the transactions between the parties. The complaining witness owned bonds in the sum of $8000 in the possession of Strauss & Co., of whom she had purchased them. She testified that she desired to have these bonds in her own possession so that she might exchange them for bonds maturing in a shorter period of time; that while in the office of Charles H. Leach she met plaintiff in error; that Leach told her the plaintiff in error was interested in shares of the Co-Operative League of America, a corporation of Pennsylvania doing, among other things, an investment and insurance business. It appears that this corporation issued what it characterized as stock contracts, by which, on payment of one per cent of their face value per month, the purchaser was allowed to pay for the stock. After the meeting in the office of Leach, plaintiff in error and the complaining witness became quite good friends. He visited her and her daughter at their home and she in turn visited his mother and his sister at his home. The complaining witness testified that when she withdrew the bonds from Strauss & Co. she turned them over to plaintiff in error, who put them in his safety deposit box and kept them for a time and later sold a portion of them and purchased for her in their stead Sheridan Surf Apartment bonds, which were to mature in a short time and bore a

larger rate of interest. She testified that she signed the contract for shares in the Co-Operative League of America and directed him to use $500 to make the first payment on such contract, but that she did not authorize him to exchange the balance of the bonds for Sheridan Surf Apartment bonds. Plaintiff in error testified that all use of her property was with her consent; that he advised the exchange of the Strauss bonds for the apartment bonds because he thought the security good and because they matured in a short time and bore a larger rate of interest. This is the only matter of importance concerning which the testimony of the complaining witness and plaintiff in error does not practically agree. She also stated that she later knew about the apartment bonds, and not desiring to have all of her money in one class of securities she exchanged a portion of these bonds for longer-time bonds on the Sheridan Surf apartment; that this exchange was not made on the advice of plaintiff in error but on her own judgment. It appears that the apartment bonds which plaintiff in error secured for her were paid after she had exchanged them for longer-time bonds on the same property. While holding these latter bonds the property went into the hands of a receiver. The evidence does not disclose whether she will lose anything on those bonds.

On the recommendation of plaintiff in error the complaining witness entered into thirty-five contracts for stock in the Co-Operative League of America, each calling for $5000 in stock and requiring a payment of $1750 per month. She testified that this was more stock than she wanted, but that on his recommendation she took out the stock in that amount because so large an amount standing in her name would give her certain refunding advantages; that plaintiff in error agreed to, and did, dispose of all those contracts but ten, which left her with contracts for $50,000 in stock with a monthly payment of $500. By the plan plaintiff in error proposed, the Sheridan Surf

Apartment bonds, as they matured, were to be used, as far as necessary, to meet the monthly payments of $500 on these contracts. It appears that the Co-Operative League of America had not complied with the Blue Sky law of Illinois and was later thrown into bankruptcy. The complaining witness had by that time paid out approximately $2000 on her stock contracts. It is not shown that plaintiff in error knew of such lack of compliance with the Blue Sky law on the part of the Co-Operative League of America, nor is it shown that he profited in any way by the transactions which he conducted for the complaining witness. The evidence shows that he also had contracts with that concern on which he was paying $100 per month, and that he advanced portions of his own money to meet the payments for the complaining witness, and that he also lost by the transaction. Both the complaining witness and her daughter testified that they were at the time of the trial of the opinion that plaintiff in error was sincere in his judgment that the Co-Operative League of America was a good investment but that his judgment on that matter was bad. It also appears from the testimony of the complaining witness that she did not depend wholly on the judgment of plaintiff in error but went to other holders of such contracts, including officers of a church in the city of Chicago, all of whom held contracts for large sums in stock and were of the opinion that the investment was a good one.

The evidence discloses a close friendship between these parties. The complaining witness testified that she had confidence in the integrity and judgment of plaintiff in error. It is necessary, however, in order to support a conviction for the crime of confidence game, that there be a swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler. (*DuBois* v. *People,* 200 Ill. 157.) Confidence game is established by proof of a swindling scheme, trick or device by which the victim is swindled. (*People* v. *Peers,* 307 Ill. 539; *Peo-*

*ple* v. *Koelling,* 284 id. 118; *People* v. *Gallowich,* 283 id. 360; *People* v. *Weil,* 244 id. 176; *VanEyck* v. *People,* 178 id. 199.) There is not in the evidence any proof of a trick or device or dishonest motive on the part of plaintiff in error. It appears both from the testimony of the complaining witness and of plaintiff in error that he had confidence, as did others, in these stock contracts. In order to constitute the crime of confidence game it is necessary that there be more than confidence reposed. There must be some sort of trick, device or scheme by which the victim is swindled. The fact that the parties stand in a confidential relationship, by means of which one is induced to adopt the business judgment of the other which turns out to have been imprudent, is not sufficient to constitute the crime of confidence game. . In this case there is no evidence whatever that plaintiff in error profited in any way by the purchase of these stock contracts or by any of his transactions in handling the affairs of the complaining witness. He testified that he was not a representative of the Co-Operative League of America and that he received no benefit whatever from the purchase by the complaining witness of the stock contracts. This is in nowise denied. The evidence in the case not only does not prove confidence game, but discloses that plaintiff in error, as a friend of the complaining witness in whom she had great confidence, has in handling her affairs lost money for her and for himself by the use of bad business judgment, in which both the complaining witness and her daughter testified that they believe he was sincere.

The evidence does not justify a verdict of guilty, and the judgment is therefore reversed.     *Judgment reversed.*