THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GLENN W. SNYDER, Plaintiff in Error.

*Opinion filed October 22, 1927—Rehearing denied Dec. 8, 1927.*

1. CRIMINAL LAW—*what constitutes the confidence game.* The confidence game statute was designed to reach that class of offenders known as confidence men, who practice upon unwary victims various swindling schemes, and the gist of the crime is the obtaining of the confidence of the victim by some false representation or device.

2. SAME—*what does not constitute confidence game.* Where property is obtained by unlawful means other than by fraudulently obtaining the confidence of the victim and then abusing the confidence so obtained a conviction for the confidence game can not stand, as, where the confidence of the injured party is honestly obtained through a course of regular business dealings.

3. SAME—*when automobile dealer cannot be charged with confidence game.* An automobile dealer whom an acceptance corporation entrusts with blank judgment notes, insurance applications and purchasers' statements to be used when a car is purchased on a partial payment plan, and who obtains money of the corporation on sight drafts drawn after fictitiously filling out such notes, applications and statements, cannot be charged with the confidence game, where there is no showing that the dealer obtained the confidence of the corporation by means of a scheme, trick or device, but rather by business dealings in the past which had been regular and without fraud.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. W. B. BROTHERS, Judge, presiding.

JOHN F. CASHEN, JR., for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (HENRY T. CHACE, JR., EDWARD E. WILSON, HENRY E. AYERS, and JOHN HOLMAN, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

In June, 1924, the Central States Finance Corporation of Chicago arranged to discount customers' notes taken from time to time by plaintiff in error, Glenn W. Snyder, a Chevrolet automobile dealer at Watseka. A special form of judgment note, application for insurance and purchaser's statement, and dealer's statement and recommendation, were supplied to plaintiff in error for use by him when the customer bought his automobile on the deferred payment plan. It was agreed that when a note was to be discounted plaintiff in error was to draw a sight draft on the Central States Finance Corporation, which draft was to be accompanied by the note, purchaser's statement and dealer's recommendation. A number of transactions were had between the parties which were regular and the payments were made in accordance with the purchaser's agreement. November 19, 1924, plaintiff in error drew a sight draft on the finance corporation for $600 and accompanied it with a note purporting to be signed by Charles W. Holmes and statements showing that Holmes had bought a Chevrolet sedan at $890, that he had paid $290 in cash and had given a note for $704, to be paid in sixteen monthly installments of $44 each, the note representing the unpaid balance of $600, brokerage charges of $96 and a fire and theft insurance premium of $8. The note and statements were, in

fact, fictitious. Plaintiff in error paid the first four install-ments of $44 each, and when the fifth installment was not paid the finance corporation made an investigation, which revealed the fraud of plaintiff in error. Further investiga-tion showed that plaintiff in error had defrauded the finance corporation in three other transactions. Under an indict-ment charging him with obtaining the money and credit of the Central States Finance Corporation by means and by use of the confidence game plaintiff in error was convicted and sentenced to the penitentiary. He prosecutes this writ of error, contending, among other things, that the evidence does not support the charge.

There was nothing unusual about the arrangement made between plaintiff in error and the finance corpora-tion. There is no evidence that plaintiff in error resorted to any fraudulent scheme to obtain the confidence of rep-resentatives of the finance corporation, nor is it proven that the notes forwarded by him were purchased because the finance corporation reposed any special confidence in him. The draft was paid when the papers were in due form, and the thing that induced the payment of the drafts was the representation of facts contained in the purchaser's state-ment and in the dealer's recommendation. The confidence game statute was designed to reach that class of offenders known as confidence·men, who practice upon unwary vic-tims swindling schemes as various as the mind of man is suggestive. The gist of the crime is the obtaining of the confidence of the victim by some false representation or device. (*People* v. *Heinsius,* 319 Ill. 168; *People* v. *Har-rington,* 310 id. 613; *People* v. *Peers,* 307 id. 539; *People* v. *Santow,* 293 id. 430.) Where the confidence of the in-jured party is honestly obtained through a course of regu-lar business dealings, and the one in whom confidence is reposed breaches that confidence to the injury of the one reposing it, the statute defining and punishing the obtain-ing of money by means and by use of the confidence game

is not violated; (*People* v. *Perlmutter,* 306 Ill. 495;) nor does the fact that one improvidently invests his money on the judgment of one in whom he has confidence, and thereby loses his money, constitute the crime. (*People* v. *Benton,* 324 Ill. 331; *People* v. *Bischoff,* 319 id. 262.) Where the property is obtained by unlawful means other than by fraudulently obtaining the confidence of the victim and then abusing the confidence so obtained, a conviction for the confidence game cannot stand. (*People* v. *Ingravallo,* 309 Ill. 498; *People* v. *Koelling,* 284 id. 118; *People* v. *Gallowich,* 283 id. 360.) While there may be found in some of the opinions an expression to the effect that the confidence game is established by proving merely the obtaining of property by a swindling scheme, yet an examination of the cases shows that no conviction is permitted to stand except where the confidence is obtained by some fraudulent scheme, trick or device and the confidence so obtained is breached in the obtaining of the property of the victim. (*People* v. *Miller,* 278 Ill. 490; *People* v. *Bertsche,* 265 id. 272; *Chilson* v. *People,* 224 id. 535; *Hughes* v. *People,* 223 id. 417; *DuBois* v. *People,* 200 id. 157.) If this limitation were not placed on the statute then there would be no chart or compass to guide the public officials in the administration of the law. The evidence in this record shows simply that plaintiff in error made a designed misrepresentation of existing conditions, by which he obtained the money of the Central States Finance Corporation and thereby rendered himself liable to prosecution and punishment under the statute making it a crime to obtain property by false pretenses, and perhaps other statutes, but not under the statute under which he was indicted and convicted. *People* v. *Ingravallo, supra; People* v. *Peers, supra.*

The judgment of the criminal court is reversed.

*Judgment reversed.*