THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PERCY FRIEDLANDER, Plaintiff in Error.

*Opinion filed December 21, 1927.*

CRIMINAL LAW—*what does not constitute the confidence game.* The gist of the crime of obtaining money or property by means of the confidence game is the obtaining of the confidence of the victim by some false representation or device; and where the confidence is honestly obtained through a course of regular business dealings but the one in whom confidence is reposed betrays that confidence to the injury of the other, the confidence game statute is not applicable and a conviction thereunder cannot stand.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WORTH E. CAYLOR, Judge, presiding.

HARRY J. MEYERS, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and MERRILL F. WEHMHOFF, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Percy Friedlander, was in 1923 president of H. P. Arthur & Co., a corporation dealing in stocks and having its office in the Transportation building, in Chicago. A Mr. Levy, representing the company, called on Alice Benjamin on March 16, 1923, for the purpose of interesting her in stocks which the company had for sale. At the close of the interview he told her he was leaving for California and that she should call plaintiff in error to close the deal which they had discussed. About three days later she called the office of the company by telephone and was connected with plaintiff in error. She told him that she had called to inquire about some Daniel Boone Woolen Mills stock. She had purchased ten shares of this

stock March 16 for $433.75. She made the first payment
of $125 by check payable to Arthur & Co., and the balance
was carried on open account for twelve months, a certifi-
cate to be delivered on final payment. When she talked to
plaintiff in error March 19 she told him she desired to pay
the balance due on her account, and he suggested that she
might dispose of some other stock she had which was not
producing an income. She sent down 113 shares of Glen
Rock Oil Company stock and her account was credited with
$157.43 March 22. During this conversation she asked
plaintiff in error what he thought of her Daniel Boone
Woolen Mills stock, and he said he thought it was a good
buy at the price. She ordered an additional ten shares of
the stock at $44.25 a share and made an initial payment
of $100. She made other payments on this stock from time
to time and by the last of May had made her final payment.
The stock certificate was not issued to her in due course
and she called to inquire the reason. Plaintiff in error told
her that he had to buy the stock before he could deliver it
to her but that she need not worry. She waited several
days and called at his office again, when he repeated his
assurance that she need not worry and that the certificate
would be delivered. Finally, about the first of June she
went to the office with her brother, and again plaintiff in
error told her she need not worry about the stock certifi-
cate; that he had it in his vault and would get it to her
right away. She did not receive the certificate, and when
she went to the office near the end of August, 1923, she
found it closed. In the summer of 1923 she also bought
through plaintiff in error ten shares of Standard Oil of New
Jersey and ten shares of Hupp Motor. All told she paid
Arthur & Co. about $1400 for stock which she purchased
and for which she has never received a stock certificate.
January 29, 1924, an indictment was returned against plain-
tiff in error containing four counts, the first charging lar-
ceny as bailee, the second embezzlement, the third confidence

game, and the fourth larceny. The cause was continued from term to term and was finally submitted to a jury in April, 1926. The State's attorney elected to proceed under the third count of the indictment, and a verdict of guilty was returned. May 6, 1926, a motion for a new trial was overruled, judgment was entered on the verdict, and an order entered allowing sixty days for filing a bill of exceptions and staying the *mittimus* until July 6. The bill of exceptions was presented to the trial judge July 3 and was finally approved January 7, 1927. Orders were entered from time to time staying the issuance of the *mittimus* to March 9, 1927. The cause was presented to this court at its October term, 1927. There is no explanation for the unusual delay in presenting this simple case for review.

The gist of the crime of obtaining money or property by means of the confidence game is the obtaining of the confidence of the victim by some false representation or device. Where the confidence of the injured party is honestly obtained through a course of regular business dealings and the one in whom confidence is reposed violates that confidence to the injury of the one reposing it, the statute defining and punishing the obtaining of money by means and by use of the confidence game is not violated. Where the property is obtained by unlawful means other than by fraudulently obtaining the confidence of the victim and then abusing the confidence so obtained, a conviction for confidence game cannot stand. (*People* v. *Snyder,* 327 Ill. 402; *People* v. *Schneider,* 327 id. 270.) It is clear from this record that plaintiff in error is not guilty under the third count of the indictment. The other counts were dismissed on the motion of the State's attorney, and so the judgment cannot rest on them.

The judgment of the criminal court is reversed.

*Judgment reversed.*