(No. 22657.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM E. GOULD *et al.* Plaintiffs in Error.

*Opinion filed April 17, 1936—Rehearing denied June 3, 1936.*

STONE, C. J., dissenting.

S. R. KENWORTHY, and EDWARD L. EAGLE, for plaintiffs in error.

OTTO KERNER, Attorney General, MARTIN E. O'CON-NOR, State's Attorney, and J. J. NEIGER, for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

William E. Gould and Sam D. Burge were convicted in the circuit court of Henry county on an indictment charging them with obtaining the property of Richard Naseef by means and by use of the confidence game. The cause is here on writ of error.

The principal ground urged for reversal is that the evidence does not show that defendants were guilty of the confidence game, and that if any crime was proven it was the obtaining of Naseef's property by false representations.

Defendants for a number of years had been officers of the Savings Bank of Kewanee. At the time of the transaction for which they were indicted Gould was president and Burge was cashier. They also conducted in the banking room a farm-loan business under the name of Fischer, Gould & Burge. The business had been in existence for more than twenty years prior to Fischer's death, in August, 1926. Thereafter it was continued under the same name until a receiver was appointed, in November, 1927. The bank closed in September of that year. Naseef was engaged in the confectionery business. He is of foreign birth and reads or writes but little English. He was a customer of the bank, and also of the co-partnership, for more than twenty years. The transaction with the defendants upon which the charge is based was an exchange on November 12, 1926 of mortgage notes aggregating $9000 held by him for notes of the same amount but secured by a later trust deed upon the same land. The land consisted of a farm of 440 acres in Henry county. Henry J. Ringel, the owner, made a trust deed to Cairo A. Trimble in 1919 to secure an indebtedness of $35,000. Later in the same year he executed two junior trust deeds to

John Fischer, trustee, one for $16,000 and the other for $17,500, to secure money borrowed from defendants' firm. The junior trust deeds were foreclosed and the land was sold subject to the senior encumbrance of $35,000. A master's deed was issued to Stanley M. Ringel for a purported consideration of $31,550.04, and on November 12, 1923, he executed notes of that date aggregating $30,000, payable to himself three years thereafter, with interest at six per cent. The notes recited that they were secured by trust deed of even date to John Fischer, trustee, on Henry county land. They were endorsed by the maker and the co-partners. On the same day Stanley M. Ringel quit-claimed the premises to Sam Burge. Burge re-conveyed to Ringel. It appears that the trust deed was not executed until March 8, 1924, and was not recorded until December 10. Thereafter Ringel again quit-claimed to Burge. While Burge held the record title he executed two trust deeds to Trimble, one for $25,000 and the other for $10,000 to replace the senior mortgage, which was thereupon released. This left the $30,000 trust deed subject to the Trimble encumbrances of $35,000. On January 3, 1924, Naseef purchased from the partnership $9000 of the notes out of the $30,000 issue secured by the junior trust deed. It does not appear from the record, and it is not claimed, that Naseef was misled in any way by defendants into the belief that the notes were secured by the first mortgage or trust deed. On November 12, 1926, Burge again executed a quit-claim deed to the land to Ringel, and Ringel executed a trust deed securing notes for $40,000, due five years after date. Ringel then conveyed the land to Burge. Stanley M. Ringel had no interest in the land. He held title for the benefit of the defendants and occupied the farm under a lease from Burge, and the trust deeds executed by him were with an understanding between him and defendants that he should not be liable. The words, "Please do not publish," appear in Burge's handwriting

upon the outside of the several deeds and trust deeds mentioned.

Naseef testified that he went to the office of defendants on November 17, 1926, and demanded payment of his notes, stating that he had decided to purchase an apartment building. He first talked to Gould, who called Burge into conference. In the latter's presence Gould told Naseef he was foolish to buy real estate when his farm loans paid six per cent each year, and reminded him that they had been paying the interest on the notes he held. At that time they paid him all the interest then due on his notes. Gould told Burge to get some notes which they had for sale, and Burge brought in a pile of them and placed them on a table. Gould said: "Mr. Naseef, we have the best farm loans in Henry county close to Kewanee. It will draw you six per cent interest, first mortgage notes, just as good as government bonds; and besides that, we have these notes endorsed by Fischer, Gould & Burge. Another thing, the Savings Bank of Kewanee is behind those notes. What better investment would you want?" Both Gould and Burge assured him the notes were first farm mortgage loans, and Burge stated they did not sell any other kind. Naseef told them, "If that is what you promise, I will give up my real estate and buy that note from you. But one thing I am afraid of. Nine thousand dollars in one piece of land I don't like very well." Gould then said, "You won't go wrong Mr. Naseef; it is better than government bonds, that investment." Naseef relied upon their statements and did not know that the notes he received were secured by the same land as the notes he surrendered. He then turned his $9000 in notes over to plaintiffs in error and received new notes for a like sum out of the $40,000 notes secured by the trust deed of November 12, 1926. Nine thousand dollars had been paid on Trimble's $10,000 trust deed, leaving an aggregate of

$26,000 unpaid on the Trimble prior liens. In November, 1928, Trimble acquired the property under strict foreclosure.

There is a difference between the crime of confidence game and that of obtaining money or property by false pretenses. On account of the multitude and diversity of means employed to fraudulently obtain the confidence of a victim, the term "confidence game" can hardly be defined in a manner that will cover and segregate all cases of that nature from those constituting the offense of obtaining money or property by false pretenses. Obviously, false pretenses of some sort are employed in a confidence game. The crimes are separate and distinct and are differentiated by the facts and circumstances of the transactions. The difference between the two offenses may be found in the many expressions of this court where the question has been at issue. By those cases it is well established that any designed misrepresentation of an existing fact or condition by which a party obtains the money or goods of another is a false pretense under the statute making it a crime to obtain money or property by false pretenses. (*People* v. *Peers,* 307 Ill. 539; *Jackson* v. *People,* 126 id. 139.) The confidence game statute was designed to reach that class of offenders known as confidence men, who practice upon unwary victims swindling schemes as various as the mind of man is suggestive. As the name of the crime implies, the gist of it is the obtaining of the confidence of the victim by some false representation or device. (*People* v. *Snyder,* 327 Ill. 402; *People* v. *Parker,* 356 id. 138; *People* v. *Heinsius,* 319 id. 168; *People* v. *Harrington,* 310 id. 613; *People* v. *Peers, supra; People* v. *Santow,* 293 Ill. 430.) A swindling operation which is not connected with the element of confidence fraudulently obtained for the purpose of the swindle does not constitute the crime of confidence game. (*People* v. *Peers, supra; People* v. *Rallo,* 293 Ill. 304; *People* v. *Santow, supra.*) It is not enough to show that money

or property was obtained by false pretenses. (*People* v. *Peers, supra; People* v. *Koelling,* 284 Ill. 118.) It is well settled that in order to constitute the crime of confidence game it is necessary that there be more than confidence reposed in the swindler. Where the confidence of the injured party is honestly obtained through a course of regular business dealings and the one in whom the confidence is reposed·breaches that confidence to the injury of the one reposing it, the statute defining and punishing the confidence game is not violated. (*People* v. *Snyder, supra; People* v. *Benton,* 324 Ill. 331; *People* v. *Perlmutter,* 306 id. 495.) Where the property is obtained by unlawful means other than by fraudulently obtaining the confidence of the victim and abusing the confidence so obtained, a conviction for the crime of confidence game cannot stand. (*People* v. *Snyder, supra; People* v. *Benton, supra; People* v. *Perlmutter, supra.*) Where the property is obtained by unlawful means other than by fraudulently obtaining the confidence of the victim and abusing the confidence so obtained, a conviction for the crime of confidence game is not warranted. (*People* v. *Snyder, supra; People* v. *Ingravallo,* 309 Ill. 498; *People* v. *Koelling, supra; People* v. *Gallowich,* 283 Ill. 360.) Expressions may be found in some opinions of this court indicating that the crime of confidence game is established by proving, merely, the obtaining of money or property by a swindling scheme, but whenever the issue as to the difference between the two · crimes has been clearly presented we have adhered to the principles announced here.

If Naseef had confidence in defendants it arose from the long course of honest business dealings between them and him over a period of more than twenty years. There is nothing in the testimony to indicate that such confidence was inspired by anything which was said or done in connection with the trade of his old notes for new ones. If his testimony is true, defendants were guilty of obtaining his

property by false pretenses, and they were subject to the penalties of the statute relating to that offense. Such a showing, without the element of confidence fraudulently obtained for the purpose of the swindle, is not sufficient to support a conviction under the confidence game statute. That statute being penal, we are not authorized to extend its meaning or provisions by implication. The proofs are insufficient to bring defendants within its terms.

The judgment of the circuit court is therefore reversed.

*Judgment reversed.*

Mr. Chief Justice Stone, dissenting:

I do not concur in the majority opinion. It changes the rule in this State governing the crime of confidence game. Under the rule as it existed when this case was tried, the accused were proved guilty by an abundance of evidence. This is a flagrant case. This is no time to change the rule, even if there were valid arguments for such change. The majority opinion has so constricted the scope of the confidence game statute as largely to nullify it. There is, to be sure, a difference between obtaining money by false pretense and obtaining the same by means and by use of the confidence game. False pretense, as defined by this court and by law writers, is such a fraudulent representation of an existing or past fact, by one who knows it not to be true, as is adapted to induce the person to whom it is made to part with something of value. (*Jackson* v. *People,* 126 Ill. 139; 2 Bishop on Crim. Law, 415.) The crime of confidence game may involve false pretense just as the crime of robbery involves assault. The same act may constitute in law different offenses. (*People* v. *Nall,* 242 Ill. 284; *Nagel* v. *People,* 229 id. 598; *VanEyck* v. *People,* 178 id. 199.) While there is language in some of the opinions of this court to the effect that the confidence game statute was designed to reach a class of offenders known as "confidence men," such persons are by no means

the only ones whose acts come within the statute, as the rulings of this court in many cases show. The act has been many times applied in cases where the accused had no record of previous offenses of that sort.

The majority opinion holds that where confidence, honestly obtained through a course of regular business dealing, is breached, such does not constitute confidence game, and that this is such a case. It is a rule frequently announced by this court, that where the confidence of the victim is reposed in the accused but not through any fraudulent representation made at the time of the transaction complained of, and such confidence is breached, such is not within the confidence game statute. This is but the common-sense view. But this court has never heretofore held that the fact that the victim previously had confidence in the accused rendered the latter immune from the confidence game statute where he had defrauded the victim through fraudulent representations concerning the transaction. Clearly, one who, for a certain use and purpose, trusts his funds to another without fraudulent representation on the latter's part, and so parts with his money to his injury, has not been fraudulently induced so to do. Of such a case is *People* v. *Benton,* 324 Ill. 331, where the complaining witness came to the accused for advice, which the latter gave honestly but which turned out to be bad advice. There was no fraud in that case. Of like character are *People* v. *Friedlander,* 328 Ill. 35, and *People* v. *Heinsius,* 319 id. 168. In *People* v. *Perlmutter,* 306 Ill. 495, the accused had been accorded credit and had paid for goods sold to him, except in the case of the transaction complained of. It was held that there was no evidence of deceit. In *People* v. *Snyder,* 327 Ill. 402, it was found that there was no evidence of any fraudulent scheme or misrepresentation to obtain the confidence of the victim's representative. Also such a case was *People* v. *Peers,* 307 Ill. 539.

If application of the confidence game statute be limited to cases where the swindler has no reputation for honesty known to the victim, and so the victim had no confidence in him previous to the transaction complained of, or to those offenders who have not previously had honest dealings with the victim, many who, by false representations concerning the transaction, gain the confidence of their victims in the *bona fides* of such transaction and defraud them must escape the confidence game statute. Such could not have been the intention of the legislature. To so limit the act is to largely nullify it. The confidence contemplated in that statute is confidence in the accused procured by fraudulent representations concerning the transaction offered the victim. Whether the victim had previously thought the accused an honest man or whether he was his friend can be of no weight in determining whether the confidence game statute applies to a case where the confidence of the victim is induced by fraudulent representations. Quite obviously, if the victim did not believe, or at least presume, the swindler to be honest in his representations he would not deal with him at all. The gist of the offense lies in gaining the confidence of the victim by fraudulent representations concerning the transaction, but. for. which fraud he would not have entered into the deal.

In *People* v. *Crawford,* 278 Ill. 134, Crawford was convicted of obtaining the money of one Saxby by means of the confidence game. On review here an instruction was complained of which told the jury, in effect, that even though the transaction of the defendant with Saxby assumed, and appeared in form, to be a business transaction, yet if the jury believed, beyond a reasonable doubt, that the defendant through his scheme or device, for the purpose of defrauding Saxby, secured his confidence and obtained his money, thereby cheating him, they should find the defendant guilty. It was argued that such an instruction erroneously told the jury that if the confidence of

Saxby was lawfully obtained the jury might nevertheless find the defendant guilty. This court, however, approved that instruction, saying: "The jury were directed to find defendant guilty from the evidence surrounding the transaction which the defendant had with Saxby, and his conduct in such transaction, and not from any other conduct or the general course of life or reputation of the defendant."

The victim may have had many transactions with the swindler in which the latter acted honestly, but if by fraudulent means he has gained the victim's confidence in his representations concerning the particular transaction the confidence so gained brings the swindling transaction within the statute. Numerous cases of this State place this construction on the act. In People v. Brady, 272 Ill. 401, the victim, Flake, went to Wilson, one of the accused, who was a banker. He had confidence in him as a man by reason of his position as a banker, but he was induced to go into the particular transaction to his injury because of Wilson's fraudulent representations as to that transaction, and Wilson, with Brady and others, was held guilty of the crime of confidence game.

In People v. Singer, 288 Ill. 113, the complaining witness, who was an officer of the defrauded bank, knew the accused favorably and well. The accused was president of a small bank and had previously done business with the bank defrauded. He was a member of a lodge to which the complaining witness belonged, and yet, because of the fraudulent representations by which Singer gained the confidence of the complaining witness in the particular transaction with which he was charged, Singer was held guilty of the confidence game.

In People v. Harrington, 310 Ill. 613, the accused had had a number of transactions with the complaining witness, all of which had turned out well for the latter, and in which, so far as the record shows, the accused dealt honestly with him, but the transaction in which the com-

plaining witness lost his money was one induced by Harrington's fraudulent representations as to that transaction, and the judgment finding Harrington guilty of confidence game was sustained. It was there said: "The confidence game statute covers any scheme whereby a swindler wins the confidence of his victim and then swindles him of his money or property by taking advantage of the confidence fraudulently obtained. If the transaction is, in fact, a swindling operation, it is immaterial that the form assumed is that of a lawful business transaction."

In *People* v. *Epstein*, 338 Ill. 631, Epstein was a check weighman for a miners' union and had so acted for years. It is apparent from the record that he had the confidence of the members of that union, including the complaining witness, because of his frequent handling of money for them in the correction and adjustment of weights of the coal they had mined and the pay they received for mining it. He induced the complaining witness to make and deliver to him a check for $24 on the representation that it was to be used to pay another miner for the mining of coal erroneously credited to complaining witness. He appropriated that check to himself, and his conviction of the crime of confidence game was there sustained though it was apparent that through years of transactions with the complaining witness the latter had confidence in him. Surely it cannot be said that a general reputation for honesty or past· honest dealings with the victim is alone sufficient to shield the swindler from the statute.

In *People* v. *Zurek*, 277 Ill. 621, Zurek was convicted of obtaining money of the complaining witness by means of the confidence game. He kept a saloon and did some business as real estate agent. He and the complaining witness were friends of long standing. Zurek, by fraudulent promises to make more money for the complaining witness, induced him to give him a substantial sum of money. He proposed that by the assistance of a confederate he would

cause the money to increase by putting it into a certain box or pail. It was held that the confidence of the victim induced by the accused in the scheme by which he and his confederates were to add to the complaining witness' money brought the crime within the definition of the confidence game.

In *People* v. *Emmel,* 292 Ill. 477, Emmel was found guilty of obtaining $5000 from Lisetta Springer by means of the confidence game. Mrs. Springer, a widow, was engaged in the bakery business. For thirty years Fred Emmel, father of the accused, had invested Mrs. Springer's funds for her and practically managed her loan business. For a number of years the accused conducted Mrs. Springer's business as his father had done. On the date of the transaction complained of, the accused, on the representation that he desired to collect certain of Mrs. Springer's mortgages that were due, procured from her, and appropriated to his own use, notes and mortgages amounting to $5000. It was argued there, as in this case, that no trick or misrepresentation was made to procure the notes but that they were delivered because of the confidence reposed in the plaintiff in error arising from a long succession of fair dealing and honest transactions, and that obtaining money by reason of a belief in the honesty of the person to whom it is delivered, inspired by previous honest transactions, does not constitute the confidence game. In holding this ground untenable this court said: "It is also immaterial how the confidence has been acquired, if it is, in fact, used to enable the person in whom it is reposed to obtain the property of his victim for the purpose of swindling him out of it. Where one has acquired the confidence of another, whether suddenly and by falsehood and deceit or by a long course of honest business dealing, and has made use of that confidence to obtain the other's property with the intention of cheating the latter out of it and for that purpose, the person so obtaining the property may,

under our statute as it has been construed in the cases cited and in *People* v. *Crawford,* 278 Ill. 134, be convicted of obtaining the property by means of the confidence game."

In *People* v. *Shepard,* 358 Ill. 338, the rule often announced and applied by this court is again stated, that the essence of the crime is the trust or confidence reposed in the swindler, obtained by some fraudulent scheme, trick or device and betrayed.

The cases above cited show that this court has consistently held that where fraudulent representations concerning the particular transaction are made for the purpose of gaining the victim's confidence and swindling him, and which do so gain it, to his injury, the crime of confidence game is proved, and it matters not that the accused at the time enjoyed a reputation for honesty known to the victim.

It is argued that there is nothing in the testimony in this case to indicate that the confidence of Naseef, the complaining witness, was inspired by anything that was said or done in connection with the transaction here complained of. Naseef had bought securities from plaintiffs in error and was a customer at the bank, yet it is evident that on this day he had no intention of buying the fraudulent notes but intended to collect the money for the notes then due and to purchase real estate with it. He undoubtedly would have insisted upon payment of the notes but for the fraudulent representations by which his choice in the matter was changed. That change in his purpose occurred because of confidence inspired by those fraudulent representations. He did not come to Burge and Gould seeking investment of funds because of his confidence in them, as was true in some of the cases decided by this court and herein discussed. He sought no investment with them, but, on the contrary, demanded payment of the notes held by him that he might make an investment of his own choosing. It is but a fair statement, well borne out by the evidence, that he changed his mind because of the fraudulent statements

made to him by Burge and Gould at the time of this transaction. There is ample evidence, therefore, that the confidence such fraudulent representations inspired in him was thus built up during the conversation he there had with the accused. It is equally well shown that they intended to thus defraud him. Without investigation he took their word that the notes were first mortgage notes; that they were a better investment than an apartment building which he had contemplated buying; that they were as good as government bonds, and that the bank was behind them as well as Burge and Gould. All these statements Burge and Gould knew were false. Surely the fact that these swindlers were favorably known in that community should not be allowed to become a bulwark behind which they may hide, where, as the evidence shows, they engaged in a course of conduct designed to swindle Naseef.

The decisions of this court do not afford basis for holding in a case where, as here, bankers who have had a reputation for honesty in the community turn rogues and fleece the people out of their property, and that because the accused were at some time considered by the complaining witness to be honest men they may not be punished for a felony under the confidence game statute but can be held guilty only of a misdemeanor. The crime committed here is more cowardly and more deserving of punishment as a felony than robbery. The robber must face his victim and demand his money.

No complaint is made of the conduct of the State's attorney or of the rulings of the trial court that would indicate that these plaintiffs in error have not had a fair trial. The record discloses that the State's attorney fairly and ably conducted the prosecution. The guilt of the plaintiffs in error was thoroughly established. Under the decisions of this court the People made out a case within the confidence game statute.